## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MATTHEW CRISTOSTOMO, ANTHONY BOLLINI, SPENCER VERRILLA, DERRICK EVANS, CLIFTON BRADLEY, and ROBERT KAMINSKY, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>NEW BALANCE ATHLETICS, INC.,<br><br>     Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs Matthew Cristostomo, Anthony Bollini, Spencer Verrilla, Derrick Evans, Clifton Bradley, and Robert Kaminsky ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant New Balance Athletics, Inc. ("Defendant" or "New Balance") for the manufacture, marketing, and sale of its "Made in USA" shoes and sneakers. Plaintiffs make the following allegations based upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including the investigation conducted by their attorneys.

### <u>NATURE OF THE ACTION</u>

1. This is a class action on behalf of purchasers of several models of Defendant's footwear[1] in the United States.

---

[1] The specific footwear models at issue are the "Made in USA 990v2," "Made in USA 990v3," "Made in USA 990v4," "Made in USA 990v5," "Made in USA 992," "Made in USA 993," and "1540v3" (collectively, the "Sneakers"). The Sneakers are available in a variety of styles (men's, women's, and unisex) and color patterns.

2.      New Balance sells several models of footwear that prominently claim to be "Made in USA."  However, the Sneakers have as much as 30% of their components made outside of the United States—including the sole of the Sneakers, which is an important aspect of the shoes.  Thus, contrary to Defendant's representations and warranties, the Sneakers are not actually "Made in USA," as that term is defined by Federal Trade Commission ("FTC") regulations, which require that products marketed as "made in America" or "made in the USA" be made "all or virtually all" in the United States.

3.      Indeed, Defendant has been called out by the FTC for its deceptive representations. Yet Defendant continues to knowingly make these misrepresentations because consumers are willing to pay more for products that they believe are actually made in the United States.

4.      Had Defendant disclosed that the Sneakers were not in fact "Made in USA," Plaintiffs and members of the Classes would not have purchased the Sneakers or would have paid less for the Sneakers than they did.

5.      Plaintiffs and members of the Classes were accordingly injured by the price premium they paid for the Sneakers due to Defendant's misrepresentation that the Sneakers were made in the United States when they were not.

6.      Plaintiffs bring this action individually and on behalf of a class of all other similarly situated purchasers to recover damages and restitution for: (i) breach of express warranty; (ii) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (iii) unjust enrichment; (iv) fraud; (v) violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; (vi) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (vii) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (viii) violation of the Michigan Consumer Protection Act, Mich.

Comp. Laws §§ 445.903, *et seq.*; (ix) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*; (x) violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*; (xi) violation of the Florida Deceptive And Unfair Trade Practices Act, Fla. Sta. §§ 501.201, *et seq*; (xii) violation of the New York General Business Law, N.Y. Gen. Bus. Law §§ 349, *et seq.*; and (xiii) violation of the New York General Business Law, N.Y. Gen. Bus. Law §§ 350, *et seq*.

## **PARTIES**

7.     Plaintiff Matthew Cristostomo is, and at all times relevant to this action has been, a domiciliary of Chula Vista, California.  Plaintiff Cristostomo purchased New Balance sneakers— including sneaker models 992 in March 2021, 990 in June 2021, and 993 in November 2021— from a New Balance Outlet near his home.  Prior to and at the time of his purchase of the Sneakers, Plaintiff Cristostomo saw and reviewed the Sneakers' marketing, advertising, and packaging, and saw that each of the Sneakers were marketed, advertised, and packaged as "Made in USA."  In purchasing each of his Sneakers, Plaintiff Cristostomo saw and relied on Defendant's representations that the Sneakers were "Made in USA," and understood them as representations and warranties that the Sneakers were "Made in the USA."  Accordingly, those representations and warranties were part of the basis of the bargain, in that Plaintiff Cristostomo would not have purchased his Sneakers on the same terms had he known those representations were not true.  In making his purchases, Plaintiff Cristostomo paid an additional amount for the Sneakers above what he would have paid for sneakers that do not claim to be "Made in USA."  Had Plaintiff Cristostomo known that the "Made in USA" claim was false and misleading, Plaintiff Cristostomo would not have purchased the Sneakers, or would have paid substantially less for the Sneakers.  Despite these injuries, Plaintiff Cristostomo remains very much interested in purchasing Defendant's sneakers

if he could be assured that Defendant's "Made in USA" representations were accurate and compliant with FTC regulations.

8.      Plaintiff Anthony Bollini is, and at all times relevant to this action has been, a domiciliary of Farmington, Michigan.  In January 2019, Plaintiff Bollini purchased New Balance sneakers marketed, advertised, and packaged as "Made in USA," including sneaker model 990v5, from a New Balance store near his home.  Prior to and at the time of his purchase of the Sneakers, Plaintiff Bollini saw and reviewed the Sneakers' marketing, advertising, and packaging, and saw that the Sneakers were marketed, advertised, and packaged as "Made in USA."  In purchasing his Sneakers, Plaintiff Bollini saw and relied on Defendant's representations that the Sneakers were "Made in USA," and understood them as representations and warranties that the Sneakers were "Made in the USA."  Accordingly, those representations and warranties were part of the basis of the bargain, in that Plaintiff Bollini would not have purchased his Sneakers on the same terms had he known those representations were not true.  In making his purchases, Plaintiff Bollini paid an additional amount for the Sneakers above what he would have paid for sneakers that do not claim to be "Made in USA."  Had Plaintiff Bollini known that the "Made in USA" claim was false and misleading, Plaintiff Bollini would not have purchased the Sneakers, or would have paid substantially less for the Sneakers.  Despite these injuries, Plaintiff Bollini remains very much interested in purchasing Defendant's sneakers if he could be assured that Defendant's "Made in USA" representations were accurate and compliant with FTC regulations.

9.      Plaintiff Spencer Verrilla is, and at all times relevant to this action has been, a resident of Pittsburgh, Pennsylvania.  Plaintiff Cristostomo purchased New Balance sneakers, including sneaker models 990v3 and 992 in September 2021, on Amazon.  Prior to and at the time of his purchase of the Sneakers, Plaintiff Verrilla saw and reviewed the Sneakers' marketing,

advertising, and packaging, and saw that the Sneakers were marketed, advertised, and packaged as "Made in USA."  In purchasing each of his Sneakers, Plaintiff Verrilla saw and relied on Defendant's representations that each of the Sneakers were "Made in USA," and understood them as representations and warranties that the Sneakers were "Made in the USA."  Accordingly, those representations and warranties were part of the basis of the bargain, in that Plaintiff Verrilla would not have purchased his Sneakers on the same terms had he known those representations were not true.  In making his purchases, Plaintiff Verrilla paid an additional amount for the Sneakers above what he would have paid for sneakers that do not claim to be "Made in USA."  Had Plaintiff Verrilla known that the "Made in USA" claim was false and misleading, Plaintiff Verrilla would not have purchased the Sneakers, or would have paid substantially less for the Sneakers.  Despite these injuries, Plaintiff Verrilla remains very much interested in purchasing Defendant's sneakers if he could be assured that Defendant's "Made in USA" representations were accurate and compliant with FTC regulations.

10.     Plaintiff Derrick Evans is, and at all times relevant to this action has been, a domiciliary of Bloomfield, New Jersey.  In November 2020, Plaintiff Evans purchased New Balance sneakers marketed, advertised, and packaged as "Made in USA," including sneaker model 990v5 from a Foot Locker near his home.  Prior to and at the time of his purchase of the Sneakers, Plaintiff Evans saw and reviewed the Sneakers' marketing, advertising, and packaging, and saw that the Sneakers were marketed, advertised, and packaged as "Made in USA."  In purchasing his Sneakers, Plaintiff Evans saw and relied on Defendant's representations that the Sneakers were "Made in USA," and understood them as representations and warranties that the Sneakers were "Made in the USA."  Accordingly, those representations and warranties were part of the basis of the bargain, in that Plaintiff Evans would not have purchased his Sneakers on the same terms had

he known those representations were not true.  In making his purchases, Plaintiff Evans paid an additional amount for the Sneakers above what he would have paid for sneakers that do not claim to be "Made in USA."  Had Plaintiff Evans known that the "Made in USA" claim was false and misleading, Plaintiff Evans would not have purchased the Sneakers, or would have paid substantially less for the Sneakers.  Despite these injuries, Plaintiff Evans remains very much interested in purchasing Defendant's sneakers if he could be assured that Defendant's "Made in USA" representations were accurate and compliant with FTC regulations.

11.     Plaintiff Clifton Bradley is, and at all times relevant to this action has been, a domiciliary of Seminole, Florida.  In August 2020, Plaintiff Bradley purchased New Balance sneakers marketed, advertised, and packaged as "Made in USA," including sneaker model 990v5, from Newbalance.com.  Prior to and at the time of his purchase of the Sneakers, Plaintiff Bradley saw and reviewed the Sneakers' marketing, advertising, and packaging, and saw that the Sneakers were marketed, advertised, and packaged as "Made in USA."  In purchasing his Sneakers, Plaintiff Bradley saw and relied on Defendant's representations that the Sneakers were "Made in USA," and understood them as representations and warranties that the Sneakers were "Made in the USA." Accordingly, those representations and warranties were part of the basis of the bargain, in that Plaintiff Bradley would not have purchased his Sneakers on the same terms had he known those representations were not true.  In making his purchases, Plaintiff Bradley paid an additional amount for the Sneakers above what he would have paid for sneakers that do not claim to be "Made in USA."  Had Plaintiff Bradley known that the "Made in USA" claim was false and misleading, Plaintiff Bradley would not have purchased the Sneakers, or would have paid substantially less for the Sneakers.  Despite these injuries, Plaintiff Bradley remains very much interested in purchasing

Defendant's sneakers if he could be assured that Defendant's "Made in USA" representations were accurate and compliant with FTC regulations.

12.     Plaintiff Robert Kaminsky is, and at all times relevant to this action has been, a domiciliary of Fresh Meadows, New York.  In June 2021, Plaintiff Kaminsky purchased New Balance sneakers marketed, advertised, and packaged as "Made in USA," including sneaker model M990 BK5 and M990 GL5, from Amazon.  Prior to and at the time of his purchase of the Sneakers, Plaintiff Kaminsky saw and reviewed the Sneakers' marketing, advertising, and packaging, and saw that the Sneakers were marketed, advertised, and packaged as "Made in USA."  In purchasing his Sneakers, Plaintiff Kaminsky saw and relied on Defendant's representations that the Sneakers were "Made in USA," and understood them as representations and warranties that the Sneakers were "Made in the USA."  Accordingly, those representations and warranties were part of the basis of the bargain, in that Plaintiff Kaminsky would not have purchased his Sneakers on the same terms had he known those representations were not true.  In making his purchases, Plaintiff Kaminsky paid an additional amount for the Sneakers above what he would have paid for sneakers that do not claim to be "Made in USA."  Had Plaintiff Kaminsky known that the "Made in USA" claim was false and misleading, Plaintiff Kaminsky would not have purchased the Sneakers, or would have paid substantially less for the Sneakers.  Despite these injuries, Plaintiff Kaminsky remains very much interested in purchasing Defendant's sneakers if he could be assured that Defendant's "Made in USA" representations were accurate and compliant with FTC regulations.

13.     Defendant New Balance Athletics, Inc. is Massachusetts corporation with its principal place of business located at 100 Guest Street, Boston, Massachusetts 02135.  New Balance markets and sells its Sneakers throughout the United States and the States of California, Michigan, Pennsylvania, New Jersey, and Florida.

## JURISDICTION AND VENUE

14.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million, exclusive of interest and costs, and the proposed class contains more than 100 members.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

16.     This Court has general personal jurisdiction over Defendant because it is headquartered and maintains its principal place of business in this District.

## FACTUAL ALLEGATIONS

**I.      New Balance Represents The Sneakers As Being "Made In USA"**

17.     New Balance is one of the world's major sports footwear and apparel manufacturers.  Among the footwear that New Balance sells is the "99X Series," which was introduced in 1982 and has amassed a "cult following."[2]

18.     Likewise, the 1540 model is a "motion control shoe" used for walking and running.

19.     Several models of the 99X Series and the 1540v3 are included in Defendant's "MADE" series.  The "MADE" series emphasizes footwear that ostensibly is made in the United States.

///

///

///

---

[2] Jane L. Levere, "New Balance Celebrates Its Homemade Footprint," *New York Times* (Apr. 4, 2012), https://www.nytimes.com/2012/04/05/business/media/new-balance-celebrates-its-homemade-footprint.html (last accessed Dec. 2, 2021).

20.    Several of the Sneakers in question feature an American flag, the words "Made In The USA," and/or the word "USA" on the tongue of the shoe.  For instance, the 990v5 bears a "Made In The USA" representation on the tongue of the shoe, alongside an American flag:





21.     The 990v4 also bears a "Made In The USA" representation on the tongue of the shoe, alongside an American flag:



22.     The 990v3 bears a "USA" representation on the tongue of the shoe:



23.     The 990v2 bears a "Made in USA" representation on the tongue of the shoe:



24.     Finally, the 993 bears a "Made in USA" representation on the tongue of the shoe:



25.     Further, although the 992 and 1540v3 do not have representations on the front of the tongues, they are found on the "Footwear Made in the USA" collection page:



26.     In addition, the inside of the tongue of each of the Sneakers includes representations that they are "Made in USA":



27.     Further, the packaging for the Sneakers bears similar monikers, including representations on the outside of the shoe box that New Balance footwear has been "made in the U.S. for over 75 years":



28.     In short, at nearly every opportunity possible—on the tongues of the shoes and on the shoe boxes—New Balance prominently represents that the Sneakers are "Made in the USA."

## II.     New Balance Knowingly And Intentionally Violates FTC Rules Concerning "Made In USA" Representations

29.     Unfortunately for consumers, New Balance's "Made in USA" representations are not true.  The FTC has set strict guidelines on what products can truthfully and accurately bear representations that they are "Made in the USA" or the like, and the Sneakers do not fit the bill.

30.     The FTC has held that "[f]or a product to be called Made in USA, or claimed to be of domestic origin without qualifications or limits on the claim, the product must be 'all or virtually all' made in the U.S."  According to the FTC, "'[a]ll or virtually all' means that all significant parts and processing that go into the product must be of U.S. origin.  That is, ***the product should contain no—or negligible—foreign content***."[3]

31.     In determining whether a product's claims are deceptive, the FTC

considers other factors, including how much of the product's total manufacturing costs can be assigned to U.S. parts and processing, and how far removed any foreign content is from the finished product. In some instances, only a small portion of the total manufacturing costs are attributable to foreign processing, but that processing represents a significant amount of the product's overall processing. The same could be true for some foreign parts. In these cases, the foreign content (processing or parts) is more than negligible, and, as a result, unqualified claims are inappropriate.[4]

32.     The FTC also provides an example of deceptive "Made in the USA" claims:

**Example:** A table lamp is assembled in the U.S. from American-made brass, an American-made Tiffany-style lampshade, and an imported base. The base accounts for a small percent of the total cost of making the lamp. An unqualified Made in USA claim is deceptive for two reasons: The base is not far enough removed in the

---

[3] Federal Trade Commission, "Complying With The Made In USA Standard," https://www.ftc.gov/tips-advice/business-center/guidance/complying-made-usa-standard (emphasis added) (last accessed Dec. 2, 2021).

[4] *Id.*

manufacturing process from the finished product to be of little consequence and it is a significant part of the final product.[5]

33.     The Sneakers do not satisfy the FTC's requirements for a "Made in the USA" product.  Specifically, imported parts and/or foreign labor make up at least ***30 percent*** of any one of the Sneakers.

34.     Further, the 1540v3 sneakers are still listed on the "Footwear Made in the USA" collection, even though the product page contains a small print disclaimer in small font stating, "As of April 2021, the 1540v3 will no longer be produced in the United States."

35.     Indeed, New Balance's CEO has previously admitted that the soles of New Balance's shoes "are not made domestically" and New Balance "imports the soles."[6]  A *Wall Street Journal* article found that the soles are purchased from two Chinese companies:  Freetrend and Fu-tail Plastics.[7]

36.     Notably, the sole or "outsole" is one of the most important parts of a shoe.  The sole "provide[s] traction, flexibility and stability, and ***to protect the rest of the shoe from the ground***.  Because they face the ground, ***outsoles should always be made from durable materials that hold up to frequent wear***—this is the key to creating a high-quality sole."[8]  A high-quality sole (which "Made in the USA" typically stands for, as explained below) would thus be particularly important

---

[5] *Id*.

[6] Turth in Advertising (Sept. 21, 2021), https://www.truthinadvertising.org/wp-content/uploads/2021/09/New-Balance-CEO-Fox.mp4 (starting at 3:25) (last accessed Dec. 2, 2021).

[7] Timothy Aeppel, "New Balance Sweats Push to End U.S. Shoe Tariffs," *The Wall Street Journal* (Feb. 27, 2013), https://www.wsj.com/articles/SB10001424127887323764804578312461184782312 (last accessed Dec. 2, 20221).

[8] Koio, "Your Guide To The Anatomy Of A Sneaker," https://www.koio.co/pages/anatomy-of-a-sneaker (emphasis added) (last accessed Dec. 2, 2021).

to athletic footwear and running shoes—which New Balance specializes in and which the Sneakers are—because it will be subject to repeated impact with the ground when running,

37.     Therefore, the Sneakers are analogous to the above example.  Like the imported base in the table lamp, the outsole is not far enough removed from the manufacturing process to be of little consequence, **and** it is a significant part of the Sneakers.  Thus, the Sneakers' "Made in the USA" representations are false and misleading.

38.     Worse yet, Defendant knowingly and intentionally flouts these requirements.  In 1996, the FTC brought an administrative action against Defendant for making deceptive "Made in the USA" claims about its footwear.  Further, Defendant previously entered into a class action settlement over its "Made in the USA" claims for consumers who purchased New Balance footwear between January 2012 and January 2019.  *See generally Dashnaw v. New Balance Athletics, Inc.*, 2019 WL 3413444 (S.D. Cal. July 29, 2019).  Nonetheless, New Balance continues to make false and misleading "Made in the USA" claims on its Sneakers.

39.     New Balance attempts to circumvent these regulations by including a small print disclaimer in small font in portions of its website and on the underside of its packaging (but not on the shoes themselves) stating that the "MADE" series involves shoes that "contain a domestic value of 70% or greater."

40.     No reasonable consumer would expect that small print language on the underside of a packaging or hid in assorted places on a website contain language inconsistent with the representations that the Sneakers were "Made in the USA."  Nor would a reasonable consumer expect that significant portion of a shoe that claims to be "Made in the USA" was not actually made in the United States.

41.     Further, Defendant's disclaimer is in no way curative.  Defendant does not define the term "domestic value," meaning it is unclear from the disclaimer how much of the Sneakers are actually made in the United States.  Moreover, the disclaimers are not conspicuously displayed such that a reasonable consumer—especially a consumer that purchased the Sneakers from a retail location—would be aware they even exist.

42.     In sum, Defendant's Sneakers are not properly labeled as "Made in the USA" because at least 30% of the Sneakers—including the important outsoles—are imported.

### III.    "Made In The USA" Representations Are Important To Consumers, And Consumers Are Willing To Pay More For Products That Claim To Be "Made In The USA"

43.     Defendant falsely labels its Sneakers as "Made in the USA" solely to attract consumers and drive sales.  A "Made in the USA" or "Made in America" label is not just a simple label.  Rather, it is a promise that "evokes patriotism, carries an unspoken promise of quality, and has a political undertone of job security for American workers."[9]  It signifies to consumers that the product they are buying is different and "the best on the market."[10]  For some, a "Made in America" or "Made in USA" label "evoke[s] our nation's rugged individualism or impl[ies] an artisanal mystique."[11]

---

[9] Lisa Smith, "What It Takes to Be 'Made in the USA,'" *Investopedia* (Oct. 29, 2021), https://www.investopedia.com/articles/economics/12/made-in-the-usa.asp (last accessed Dec. 2, 2021).

[10] Elizabeth Brotherton-Bunch, "Why Buying American-Made Matters So Much," *Alliance For American Manufacturing* (Dec. 21, 2017) https://www.americanmanufacturing.org/blog/why-buying-american-made-matters-so-much/ (last accessed Dec. 2, 2021).

[11] Rich Regole, "The Power of Manufacturers Using 'Made in the USA' in Marketing," *Industry Week*, (Nov. 24, 2015), https://www.industryweek.com/leadership/article/21966360/the-power-of-manufacturers-using-made-in-the-usa-in-marketing (last accessed Dec. 2, 2021).

44.     Consumers purchase American-made goods because of their desire to help the national economy.   According to the Alliance for American Manufacturing, "[e]very $1.00 invested in U.S. manufacturing generates $1.81 in economic activity."[12]   Buying goods that are made in the United States helps promote domestic manufacturing jobs instead of the outsourcing of these jobs to foreign countries.[13]

45.     A "Made in USA" label also connotes an "implied level of [higher] quality," which motivates consumers to purchase American-made goods.[14]   The label can also help businesses communicate the "quality, durability, [and] authenticity" of their product.[15]   Americans know this. A recent survey of American consumers found that nearly half believe that products made in the United States are of a higher quality than those manufactured in other countries.[16]

46.     Consumers are willing to pay more for products that are labeled "Made in USA."[17] FTC Commissioner Rohit Chopra noted that consumers prefer goods that are made in America and are willing "to pay a premium for it."[18]   And in a 2020 survey, nearly 70% of consumer

---

[12] Brotherton-Bunch, *supra* note 10 (this fact is from the video).

[13] Smith, *supra* note 9.

[14] *Id.*

[15] Barry Bendes and Sharon Blinkoff, "FTC's New Rule on Made in USA Labels Precludes Advertisers from False and Misleading Statements About Products' Origin," *JD Supra*, (July 9, 2021) https://www.jdsupra.com/legalnews/ftc-s-new-rule-on-made-in-usa-labels-2306174/ (last accessed Dec. 2, 2021).

[16] Gabriel Evans and Rosemary Coates, "Survey Says: Americans Prefer 'Made In USA,'" *Reshoring Institute* (2020), https://reshoringinstitute.org/wp-content/uploads/2020/09/made-in-usa-survey.pdf (last accessed Dec. 2, 2021).

[17] *Id.*

[18] Rohit Chopra, On a Motion to Adopt the Final Made in USA Rule, (July 1, 2021), https://www.ftc.gov/system/files/documents/public_statements/1591514/ prepared_oral_remarks_of_commissioner_chopra_regarding_the_final_made_in_usa_rule.pdf (last accessed Dec. 2, 2021).

respondents said they "prefer American-made products," and 83% indicated they would pay more for products manufactured in the United States.[19]

47.     For many consumers, a "Made in the USA" label signifies quality, craftsmanship, and the opportunity to support both domestic workers and the national economy.  Some Americans view products with U.S. origins as being made with more durability and higher-quality materials.

48.     Manufacturers and businesses, including Defendant, have realized how important it can be to include a "Made in USA" or "Made in America" label on a product.  In adding the label, the manufacturer may feel entitled to charge more for the product, especially because consumers have indicated that they are willing to pay more for products made in the United States.  Unfortunately, this leaves unsuspecting consumers at the mercy of dishonest businesses that falsely label their products as having U.S. origins.  Consumers are forced to pay price premiums for products that do not actually deserve to be labeled as being "Made in USA," including Defendant's Sneakers.

49.     New Balance charges a premium for the Sneakers based on the "Made in the USA" representation.  For instance, of the thirty-four shoe models that fall under the "Footwear Made in the USA" category on New Balance's website, models range in price from $174.99 to $259.99.  However, New Balance sells many shoe models that are *not* advertised as "Made in the USA" for as little as $59.99.

50.     In short, "Made in the USA" representations are material to consumers, and consumers are willing to pay more for products that bear such representations.  Defendant has exploited this market by falsely representing its Sneakers as "Made in the USA" and charging more for them compared to footwear that does not bear such representations.  And consumers

---

[19] Evans & Coates, *supra* note 16.

would not have purchased the Sneakers—or paid substantially less for them—had they known the "Made in the USA" claim was not true.

## CLASS ALLEGATIONS

51.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Sneakers (the "Class").   Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased the Product for resale.   Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

52.     Plaintiff Cristostomo also seeks to represent a subclass of all Class Members who purchased the Sneakers in California after January 24, 2019 (the "California Subclass").

53.     Plaintiff Bollini seeks to represent a subclass of all Class Members who purchased the Sneakers in Michigan (the "Michigan Subclass").

54.     Plaintiff Verrilla seeks to represent a subclass of all Class Members who purchased the Sneakers in Pennsylvania (the "Pennsylvania Subclass").

55.     Plaintiff Evans seeks to represent a subclass of all Class Members who purchased the Sneakers in New Jersey (the "New Jersey Subclass").

56.     Plaintiff Bradley seeks to represent a subclass of all Class Members who purchased the Sneakers in Florida (the "Florida Subclass").

57.     Plaintiff Kaminsky seeks to represent a subclass of all Class Members who purchased the Sneakers in New York (the "New York Subclass").

58.     Collectively, the Nationwide Classes and the State Subclasses are referred to as the "Classes."

59.     Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions, including the addition of one or more subclasses, in connection with their motion for class

certification, or at any other time, based on, inter alia, changing circumstances and new facts obtained.

60.     **Numerosity**. The members of the proposed Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of individuals that are members of the proposed Classes. Although the precise number of proposed members are unknown to Plaintiffs, the true numbers of members of the Classes are known by Defendant.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

61.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes.   These common legal and factual questions include, but are not limited to, the following:

> (a)     whether Defendant misrepresented and/or failed to disclose material facts concerning the Sneakers;
>
> (b)     whether Defendant's conduct was unfair and/or deceptive;
>
> (c)     whether Plaintiffs and the Classes sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

62.     **Typicality.**  Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all members of the Class, purchased, in a typical consumer setting, Defendant's Sneakers, and Plaintiffs sustained damages from Defendant's wrongful conduct.

63.     **Adequacy of Representation.**   Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class Members they seek to

represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

64.     **Superiority.**  The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims are before this Court for consistent adjudication of liability issues.

## CAUSES OF ACTION

### COUNT I
### Breach of Express Warranty
### (On behalf of the Classes)

65.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

66.     Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

67.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Sneakers were "Made in the USA," as that term is defined by the FTC.

68.     Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Sneakers were offered for sale and purchased by Plaintiffs and members of the Classes.

69.     In fact, the Sneakers do not conform to Defendant's representations and warranties because imported parts and/or foreign labor make up as much as 30 percent of any one Sneaker manufactured by Defendant—including the soles, which are an important part of the Sneakers.  By falsely representing the Sneakers in this way, Defendant breached express warranties.

70.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and members of the Classes have been injured and harmed because they would not have purchased the Sneakers, or would have paid substantially less for it, if they had known that the Sneakers were not made in the United States, as that term is defined by the FTC.

71.     On December 3, 2021, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiffs that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiffs' counsel sent Defendant a letter advising that Defendant breached an express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiffs' counsel's letter is attached hereto as **Exhibit 1**.

## COUNT II
### Violation Of The Magnuson-Moss Warranty Act,
### 15 U.S.C. §§ 2301, *et seq.*
### (On behalf of the Classes)

72.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

73.     Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

74.     The Sneakers are consumer products as defined in 15 U.S.C. § 2301(1).

75.     Plaintiffs and members of the Classes are consumers as defined in 15 U.S.C. § 2301(3).

76.     Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

77.     The amount in controversy of each individual's claim is more than the sum or value of twenty-five ($25) dollars, and the aggregate amount in controversy of all claims to be determined in this suit is equal to or greater than $50,000.00.

78.     In connection with the sale of the Sneakers, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), that the Sneakers were "Made in the USA."

79.     In fact, the Sneakers do not conform to Defendant's warranty because imported parts and/or foreign labor make up as much as 30 percent of any one sneaker manufactured by Defendant—including the sole, which is an important part of the Sneakers.

80.     By reason of Defendant's breach of warranty, Defendant violated the statutory rights due to Plaintiffs and members of the Classes pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiffs and members of the Classes.

81.     Plaintiffs and members of the Classes were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Sneakers if they knew the

Sneakers were not made in the United States, and the "Made in the USA" claim was therefore false and misleading.

**COUNT III**
**Unjust Enrichment**
**(On behalf of the Classes)**

82.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

83.     Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

84.     Plaintiffs and members of the Classes conferred a benefit in the form of monies paid on Defendant by purchasing the Sneakers.

85.     Defendant voluntarily accepted and retained this benefit.

86.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the deceptively marketed sneakers, it would be unjust and inequitable for the Defendant to retain it without paying the value thereof.

**COUNT IV**
**Fraud**
**(On behalf of the Classes)**

87.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

88.     Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

89.     As discussed above, Defendant provided Plaintiffs and members of the Classes with false or misleading material information about the Sneakers, including but not limited to the fact that the Sneakers were "Made in the USA."

90.     These misrepresentations were made with knowledge of their falsehood. Defendant has previously been fined by the FTC for these false and misleading representations and entered into a class action settlement based on these same representations.  Further, Defendant admits in the small print disclaimers that, at most, only 70% of its Sneakers are made in the United States.

91.     The misrepresentations made by Defendant, upon which Plaintiffs and members of the Classes reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and members of the Classes to purchase the Sneakers.

92.     The fraudulent actions of Defendant caused damage to Plaintiffs and members of the Classes, who are entitled to damages and other legal and equitable relief as a result.

**COUNT V**
**Violation Of The California Consumers Legal Remedies Act,**
**Cal. Civ. Code §§ 1750, *et seq*.**
**(On behalf of the California Subclass)**
**(Injunctive Relief Only)**

93.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

94.     Plaintiff Cristostomo brings this claim individually and on behalf of the members of the California Subclass against Defendant.

95.     Plaintiff Cristostomo and members of the California Subclass are consumers within the meaning of Cal. Civ. Code § 1761(d).

96.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they

are of another."  Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

97.     Defendant violated Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9) by intentionally making false and misleading statements by holding out the Sneakers were "Made in the USA," when in fact they were not "Made in the USA" as reasonable consumers understand and as federal regulations define the term.

98.     Defendant's misrepresentations and omissions deceive and have a tendency and ability to deceive the general public.

99.     Plaintiff Cristostomo and members of the California Subclass have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Sneakers that they otherwise would not have incurred or paid.

100.    On December 3, 2021, prior to the filing of this Complaint, Plaintiff Cristostomo's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a).  The letter also provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff Cristostomo and all other similarly situated purchasers.

101.    Plaintiff Cristostomo and the California Subclass members seek only injunctive relief under the CLRA at this time.

///

///

///

<u>**COUNT VI**</u>
**Violation Of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On behalf of the California Subclass)**

102.     Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

103.     Plaintiff Cristostomo brings this claim individually and on behalf of the members of the California Subclass against Defendant.

104.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

105.     Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the several state consumer protection acts and common law claims.

106.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

107.     As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Sneakers is likely to deceive reasonable consumers.

108.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

109.     Plaintiff Cristostomo and the other California Subclass members suffered a substantial injury by virtue of buying the Sneakers that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the nature of the Sneakers, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Sneakers.

110.    There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the defective nature of the Sneakers.

111.    Plaintiff Cristostomo and the other California Subclass members had no way of reasonably knowing that the Sneakers they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

112.    The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff Cristostomo and the other California Subclass members.

### COUNT VII
**Violation Of California's False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On behalf of the California Subclass)**

113.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

114.    Plaintiff Cristostomo brings this claim individually and on behalf of the members of the California Subclass against Defendant.

115.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

116.    Defendant committed acts of false advertising, as defined by Cal. Bus. & Prof. Code § 17500, by misrepresenting that the Sneakers were "Made in the USA."

117.    Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Sneakers were untrue and misleading.

118.    Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

119.    Plaintiff Cristostomo and the California Subclass lost money or property as a result of Defendant's FAL violations because (a) they would not have purchased the Sneakers on the same terms if the true facts were known about the product; (b) they paid a price premium for Sneakers due to Defendant's promises that it was "Made in the USA"; and (c) the Sneakers did not have the characteristics as promised by Defendant.

<u>**COUNT VIII**</u>
**Violation Of The Michigan Consumer Protection Act,**
**Mich. Comp. Laws §§ 445.903, *et seq*.**
**(On behalf of the Michigan Subclass)**

120.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

121.    Plaintiff Bollini brings this claim individually and on behalf of the members of the Michigan Subclass against Defendant.

122.    Plaintiff Bollini and members of the Michigan Subclass are "persons" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

123.    At all relevant times hereto, Defendant was a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d) and (g).

124.    The Michigan Consumer Protection Act ("MiCPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903(1).

125.    Defendant engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the MiCPA, including: "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1). By falsely representing that the Sneakers were "Made in the USA" when in fact the Sneakers did not meet the standard for being "Made in the USA" as reasonable consumers understand and as federal regulations define the term, Defendant participated in unfair, deceptive, and unconscionable acts that violated the MiCPA.

126.    In the course of its business, Defendant willfully failed to disclose and actively concealed that its Sneakers were not in fact "Made in the USA" as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendant also engaged in unlawful trade practices by employing deception, concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Sneakers.

127.    Defendant is directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the MiCPA.

128.    As alleged above, Defendant knew that the Sneakers did not meet the standard for being "Made in the USA" as reasonable consumers understand and as federal regulations define the term, and Plaintiff Bollini and members of the Michigan Subclass were deceived by Defendant's statements into believing the Sneakers were "Made in the USA."

129.    The true information could not have reasonably been known by the consumer.

130.    Defendant knew or should have known that its conduct violated the MiCPA.

131.    As alleged above, Defendant made material statements about the Sneakers that were either false or misleading.

132.    Defendant engaged in a deceptive trade practice when it made false and misleading representations about the Sneakers—namely, that they were "Made in the USA"—which it knew at the time of the sale were false.

133.    Defendant deliberately withheld the information about the Sneakers to ensure that consumers would purchase its shoes and to induce the consumer to enter into a transaction.

134.    Defendant owed Plaintiff Bollini and members of the Michigan Subclass an independent duty, based on its respective knowledge, to disclose information about the Sneakers, because Defendant possessed exclusive knowledge about the Sneakers making them less valuable at the time of sale, while purposefully withholding material facts from Plaintiff Bollini and members of the Michigan Subclass that contradicted these representations.

135.    Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including Plaintiff Bollini and members of the Michigan Subclass.

136.    The "Made in the USA" label was material to Plaintiff Bollini and members of the Michigan Subclass.  Had Plaintiff Bollini and members of the Michigan Subclass known that the Sneakers were not "Made in the USA" as reasonable consumers understand and as federal

regulations define the term, they would either not have purchased the Sneakers, or would have paid less for them than they did.

137.    Plaintiff Bollini and members of the Michigan Subclass suffered ascertainable loss caused by Defendant's failure to disclose material information.  Plaintiff Bollini and members of the Michigan Subclass overpaid for the Sneakers and did not receive the benefit of their bargain. As the result of Defendant's false representations, the value of the Sneakers Plaintiff Bollini and members of the Michigan Subclass purchased have diminished now that the truth about where the Sneakers were made has come to light.

138.    Plaintiff Bollini and members of the Michigan Subclass were—and continue to be—at risk of irreparable injury as a result of Defendant's misrepresentations in violation of the MiCPA, and these violations present a continuing risk to Plaintiff Bollini and members of the Michigan Subclass as well as to the general public.  Defendant's unlawful acts and practices complained of herein affect the public interest.

139.    As a direct and proximate result of Defendant's violations of the MiCPA, Plaintiff Bollini and members of the Michigan Subclass have suffered injury-in-fact and/or actual damage.

140.    Plaintiff Bollini and members of the Michigan Subclass seek (1) injunctive relief to enjoin Defendant from continuing its unfair and deceptive acts; (2) monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each Michigan Subclass Member; (3) reasonable attorneys' fees; declaratory relief in the nature of a judicial determination of whether Defendant's conduct violated the MiCPA, the just total amount of penalties to be assessed against each thereunder, and the formula and procedure for fair and equitable allocation of statutory

penalties among the Michigan Subclass; and (4) any other just and proper relief available under Mich. Comp. Laws § 445.911.

141.    Plaintiff Bollini and members of the Michigan Subclass also seek punitive damages against Defendant because it acted with willful and conscious disregard of the rights of others. Defendant's unlawful conduct constitutes malice, oppression, and fraud, warranting punitive damages.

### COUNT IX
### Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.* (On behalf of the Pennsylvania Subclass)

142.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

143.    Plaintiff Verrilla brings this claim individually and on behalf of the members of the Pennsylvania Subclass against Defendant.

144.    Plaintiff Verrilla, members of the Pennsylvania Subclass, and Defendant are "Persons" within the meaning of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-2(2).

145.    73 P.S. § 201-3 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Defendant has violated numerous provisions of the UTPCPL.

146.    73 P.S. § 201-2(4)(v) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."  By marketing the Sneakers with their current packaging and advertisements, Defendant has represented and continues to represent that the Sneakers have characteristics that they do not have.

147.    73 P.S. § 201-2(4)(vii) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  By marketing the Sneakers with their current packaging and advertisements, Defendant has represented and continues to represent that the Sneakers are of a particular standard when they are of another.

148.    73 P.S. § 201-2(4)(ix) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  By marketing the Sneakers with their current packaging and advertisements, such that a reasonable consumer would believe that the Products would "made in the USA", and then not selling the Products as such, Defendant has violated 73 P.S. § 201-2(4)(ix).

149.    73 P.S. § 201-2(4)(xxi) prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  By marketing the Sneakers with their current packaging and advertisements, such that a reasonable consumer would believe that the Sneakers were "Made in the USA", and then not selling the Products as such, Defendant has created a likelihood of confusion and misunderstanding.

150.    Defendant has known or reasonably should have known that the Sneakers were not "Made in the USA" as reasonable consumers understand and as federal regulations define the term, and that Plaintiff Verrilla and members of the Pennsylvania Subclass would reasonably and justifiably rely on the packaging in purchasing the Sneakers.

151.    Defendant has intentionally and knowingly misrepresented material facts with an intent to mislead Plaintiff Verrilla and members of the Pennsylvania Subclass.

152.    The above unlawful, unfair, and deceptive acts and practices by Defendant were immoral, unethical, oppressive, and unscrupulous.  These acts caused substantial injury to Plaintiff

Verrilla and members of the Pennsylvania Subclass that they could not reasonably avoid, and this substantial injury outweighed any benefits to consumers or to competition.

153.    Defendant's "Made in the USA" representations were material to Plaintiff Verrilla and members of the Pennsylvania Subclass because they relate to a quality of the Sneakers the consumer is paying for.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

154.    As a direct and proximate cause of Defendant's conduct, Plaintiff Verrilla and members of the Pennsylvania Subclass suffered damages as alleged above.

155.    Plaintiff Verrilla and members of the Pennsylvania Subclass seek an order awarding attorneys' fees and any other just and proper relief available under the UTPCPL.

156.    Plaintiff Verrilla and members of the Pennsylvania Subclass also seek relief under 73 P.S. § 201-9.2, including, but not limited to, actual damages or $100 per class member, whichever is greater, treble damages, and attorneys' fees and costs.

**COUNT X**
**Violation of the New Jersey Consumer Fraud Act,**
**N.J.S.A. §§ 56:8-1,** *et seq.*
**(On behalf of the New Jersey Subclass)**

157.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

158.    Plaintiff Evans brings this claim individually and on behalf of the members of the New Jersey Subclass against Defendant.

159.    The New Jersey Consumer Fraud Act ("NJCFA"), §§ 56:8-1, *et seq.*, prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment,

suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." N.J.S.A. § 56:8-2.

160.   Plaintiff Evans and members of the New Jersey Subclass are consumers who purchased the Sneakers for personal use.

161.   In violation of the NJCFA, Defendant employed unconscionable commercial practices, deception, fraud, and/or false pretense by providing Sneakers that were falsely represented as being "Made in the USA," and charging a premium for the Sneakers based on those false representations.

162.   Defendant's fraudulent omissions were material to Plaintiff Evans and members of the New Jersey Subclass.   When Plaintiff Evans and members of the New Jersey Subclass purchased their Sneakers, they reasonably relied on the reasonable expectation that the Sneakers were made in the United States, as was represented on the Sneakers' packaging and the Sneakers themselves.   Had Defendant disclosed that the Sneakers contained more than a negligible amount of foreign content and were therefore not "Made in the USA," as reasonable consumers understand and as federal regulations define the term, Plaintiff Evans and members of the New Jersey Subclass would not have purchased the Sneakers or would have paid less for them.

163.   Defendant knowingly mispresented that the Sneakers were "Made in the USA" at the time of sale and at all relevant times thereafter.

164.   Defendant owed a duty to disclose that the Sneakers were not "Made in the USA" to Plaintiff Evans and members of the New Jersey Subclass because Defendant possessed superior and exclusive knowledge regarding where the Sneakers were manufactured.   Rather than truthfully

advertise the Sneakers, Defendant intentionally misrepresented that the Sneakers were "Made in the USA" with the intent to mislead Plaintiff Evans and members New Jersey Subclass to sell additional Sneakers and/or charge a price premium.

165.    Defendant knew, or should have known, that the Sneakers were not "Made in the USA," as reasonable consumers understand and as federal regulations define the term.

166.    As a direct and proximate result of Defendant's wrongful conduct in violation of the NJCFA, Plaintiff Evans and members of the New Jersey Subclass members have suffered and continue to suffer ascertainable loss because, had Plaintiff Evans and members of the New Jersey Subclass known that the Sneakers were not "Made in the USA" at the time of purchase, they would not have bought the Sneakers or would have paid much less for them.  Further, Plaintiff Evans and members of the New Jersey Subclass paid a price premium based on Defendant's misrepresentations.

167.    As a result of Defendant's fraudulent and/or deceptive conduct and/or knowing misrepresentations, Plaintiff Evans and members of the New Jersey Subclass are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial.  *See* N.J.S.A. § 56:8-19.

168.    Plaintiff Evans and members of the New Jersey Subclass also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA.  *See* N.J.S.A. § 56:8-19.

### COUNT XI
**Violation Of The Florida Deceptive And Unfair Trade Practices Act,**
**Fla. Sta. §§ 501.201, *et seq.***
**(On behalf of the Florida Subclass)**

169.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

170.     Plaintiff Bradley brings this claim individually and on behalf of the members of the Florida Subclass against Defendant.

171.     The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Sta. §§ 501.201, *et seq.*, renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce.  Fla. Stat. § 501.204.

172.     Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

173.     FDUPTA can be violated in two ways, both of which are relevant to this case.  First, Defendant has committed a "traditional" violation of FDUPTA by engaging in unfair and/or deceptive acts and practices which caused injury to Plaintiff Bradley and members of the Florida Subclass.

174.     Second, Defendant has committed a *per se* violation of FDUPTA predicated on a violation of FTC regulations.  Specifically, by representing that the Sneakers were "Made in the USA" when they were in fact not, Defendant violated FTC regulations (namely, 16 C.F.R. § 323).  The foregoing constitutes a *per se* violation of the FDUPTA because the FTC regulations are designed to protect consumers from falsely represented consumer products.  Fla. Stat. § 501.203(3)(c) (explaining that a FDUPTA violation may be based on "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.").

175.     While FDUPTA does not define "deceptive" or "unfair," Florida courts have

looked to the FTC's interpretations for guidance.  "[D]eception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 124 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) (internal quotation marks and citation omitted).  Courts define a "deceptive trade practice" as any act or practice that has the tendency or capacity to deceive consumers.  *Fed. Trade Comm'n v. Partners In Health Care Ass'n, Inc.*, 189 F. Supp. 3d 1356, 1367 (S.D. Fla. 2016). Courts define an "unfair trade practice" as any act or practice that "offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Kenneth F. Hackett & Assocs., Inc. v. GE Capital Info. Tech. Sols., Inc.*, 744 F. Supp. 2d 1305, 1312 (S.D. Fla. 2010).

176.    Defendant engaged in conduct that is likely to deceive members of the public.  This conduct includes representing that the Sneakers were "Made in the USA," which is untrue.

177.    As alleged herein, Plaintiff Bradley and members of the Florida Subclass have suffered injury in fact and lost money as a result of Defendant's conduct because they purchased the Sneakers from Defendant in reliance on Defendant's representation that the Sneakers were "Made in the USA."

178.    As alleged herein, Defendant's actions are deceptive and in clear violation of FDUTPA, entitling Plaintiff Bradley and the Florida Subclass to damages and relief under Fla. Stat. §§ 501.201-213.

179.    By committing the acts alleged above, Defendant engaged in unconscionable, deceptive, or unfair acts or practices, which constitute unfair competition within the meaning of FDUTPA.

180.    Defendant's conduct is substantially injurious to consumers.  Consumers are

purchasing and using Defendant's Sneakers without knowledge that the Sneakers are not, in fact, made in the United States.  This conduct has caused, and continues to cause, substantial injury to consumers because consumers would not have paid for the Sneakers, or would have paid substantially less for them, had consumers known that the Sneakers were not "Made in the USA." Thus, Plaintiff Bradley and the Florida Subclass have been "aggrieved" (*i.e.*, lost money) as required for FDUTPA standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

181.    Indeed, no benefit to consumers or competition results from Defendant's conduct. Because consumers reasonably rely on Defendant's representation of the manufacturing place of the Sneakers and injury resulted from ordinary purchase and use of the Sneakers, consumers could not have reasonably avoided such injury.

**COUNT XII**
**Violation of the New York General Business Law § 349**
**(On behalf of the New York Subclass)**

182.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

183.    Plaintiff Kaminsky brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

184.    Plaintiff Kaminsky and New York Subclass members are "persons" within the meaning of the New York General Business Law ("GBL"), N.Y. Gen. Bus. Law § 349(h).

185.    Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of N.Y. Gen. Bus. Law § 349(b).

186.    Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

187.    In the course of Defendant's business, Defendant intentionally made false and misleading statements by holding out the Sneakers as "Made in the USA" when in fact they did not meet the standard of "Made in the USA" as reasonable consumers understand and as federal regulations define the term.

188.    In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

189.    Defendant's deceptive acts or practices were materially misleading.  Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiff Kaminsky, about the quality of its Sneakers, as discussed throughout.

190.    Plaintiff Kaminsky and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

191.    Defendant's actions set forth above occurred in the conduct of trade or commerce.

192.    The foregoing deceptive acts and practices were directed at consumers.

193.    Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest.  Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's misleading conduct is misleading in a material way because it fundamentally misrepresents the production and quality of the Sneakers.

194.    Plaintiff Kaminsky and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that (a) they would not have purchased the Sneakers had they known the truth, and (b) they overpaid for the Sneakers on account of the misrepresentations and omissions, as described herein.

195.    On behalf of himself and other members of the New York Subclass, Plaintiff

Kaminsky seeks to enjoin Defendant's unlawful acts and practices described herein, to recover their actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under Section 349 of the New York General Business Law. Additionally, because Defendant acted willfully or knowingly, Plaintiff Kaminsky and New York Subclass members seek to recover three times their actual damages.

<u>**COUNT XIII**</u>
**Violation of the New York General Business Law § 350**
**(On behalf of the New York Subclass)**

196.    Plaintiffs incorporate by reference and re-allege the allegations contained in paragraphs 1-64 of this complaint.

197.    Plaintiff Kaminsky brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

198.    N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:  False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

199.    N.Y. Gen. Bus. Law § 350a(1)  provides, in part, as follows:

> The term 'false advertising, including labeling of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customer or usual . . .

200.    Defendant's labeling and advertisement of the Sneakers were false and misleading in a material way, via affirmative statements and omissions as Defendant failed to reveal material

facts in light of such representations or conduct.

201.   Specifically, Defendant advertised the Sneakers as "Made in the USA" when in fact they did not meet the standard for "Made in the USA" as reasonable consumers understand and as federal regulations define the term.

202.   Plaintiff Kaminsky understood Defendant's misrepresentations to mean that the Sneakers were in fact "Made in the USA" as reasonable consumers understand and as federal regulations define the term.

203.   This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

204.   This misrepresentation has resulted in consumer injury or harm to the public interest.

205.   As a result of this misrepresentation, Plaintiff Kaminsky and New York Subclass members have suffered economic injury because (a) they would not have purchased the Sneakers had they known the truth, and (b) they overpaid for the Sneakers on account of the misrepresentations and omissions, as described herein.

206.   By reason of the foregoing and as a result of Defendant's conduct, Plaintiff Kaminsky and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under Section 350 of the New York General Business Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request, individually and on behalf of the alleged Classes, that the Court enter judgment in their favor and against Defendant as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representatives of the Classes, and naming Plaintiffs' attorneys as Class Counsel;

(b)    For an order declaring that Defendant's conduct violates the causes of action referenced herein;

(c)    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For injunctive relief as pleaded or as the Court may deem proper; and;

(h)    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: December 20, 2021        Respectfully submitted,

**REARDON SCANLON LLP**

By: */s/ James J. Reardon, Jr.*
     James J. Reardon, Jr.

James J. Reardon, Jr.
45 South Main Street, 3rd Floor
West Hartford, CT  06107
Telephone: (860) 955-9455
Facsimile:  (860) 920-5242
Email:  james.reardon@reardonscanlon.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice* forthcoming)

Sean L. Litteral (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email:   ltfisher@bursor.com
              slitteral@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*pro hac vice* forthcoming)
Matthew A. Girardi (*pro hac vice* forthcoming)
Julian C. Diamond (*pro hac vice* forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: mroberts@bursor.com
             mgirardi@bursor.com
             jdiamond@bursor.com

*Attorneys for Plaintiffs*

**EXHIBIT 1**

# BURSOR & FISHER
### P.A.

**1990 NORTH CALIFORNIA BLVD.**
**SUITE 940**
**WALNUT CREEK, CA 94596**
**www.bursor.com**

**L. TIMOTHY FISHER**
Tel: **925.300.4455**
Fax: **925.407.2700**
**ltfisher@bursor.com**

December 3, 2021

*<u>Via Certified Mail – Return Receipt Requested</u>*

New Balance Athletics, Inc.
100 Guest Street
Boston, Massachusetts 02135

Re:     *Notice and Demand Letter Pursuant to U.C.C. §§ 2-607; the Massachusetts Unfair and
Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, § 9(3); California Civil
Code § 1782; and all other relevant state and local laws*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by New Balance Athletics, Inc. ("New Balance" or "You") pursuant to breaches of express warranty and violations of state consumer protection laws – related to our clients, Matthew Cristostomo, Anthony Bollini, Spencer Verrilla, Derrick Evans, and Clifton Bradley (collectively, the "Clients"), and a class of all similarly situated purchasers (the "Class") of New Balance footwear regarding the manufacture, marketing, and sale of Your "MADE" series of footwear.

The Clients purchased sneakers that You represented were "Made in USA" (the "Sneakers").[1]  Specifically, (1) Mr. Cristostomo purchased the MADE 990 and 993 models at a New Balance outlet in California; (2) Mr. Bollini purchased the MADE 990v1 model from a New Balance store in Michigan; (3) Mr. Verrilla  purchased the MADE 990v3 model from Amazon in Pennsylvania; (4) Mr. Evans purchased the MADE 990v5 model from a Foot Locker in New Jersey; and (5) Mr. Bradley purchased the MADE 990v5 model from Your website in Florida.

Each of the Clients—indeed, consumers at large—purchased the Sneakers based on the belief that they were "Made in the USA," as You represent on the packaging of the Sneakers and the Sneakers themselves, and paid a price premium based on those representations and warranties.  However, the Sneakers have as much as 30% of their components made outside of the United States.  For instance, the soles of the Sneakers—which are a highly important aspect of footwear and the athletic footwear You make in particular—are imported from Chinese companies.  Thus, contrary to Your representations and warranties, the Sneakers are not actually "Made in USA," as that term is defined by Federal Trade Commission ("FTC") regulations, which require that products marketed as "made in America" or "made in the USA" be made "all or virtually all" in the United States.  Had You disclosed that the Sneakers were not in fact

---

[1] The specific footwear models at issue are the "Made in USA 990v2," "Made in USA 990v3," "Made in USA 990v4," "Made in USA 990v5," and "Made in USA 993."  The Sneakers are available in a variety of styles (men's, women's, and unisex) and color patterns.

"Made in USA" the Clients and members of the Class would not have purchased the Sneakers or would have paid less for the Sneakers than they did.

Your conduct thus constitutes a breach of express warranty (*see* U.C.C. §§ 2-313) and common law fraud, and violates numerous consumer protection statutes, including but not limited to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.903, *et seq.*; Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*; the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.*; the Florida Deceptive and Unfair Trade Practices Act, Fla. Sta. §§ 501.201, *et seq.*; and the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, § 2(a). As a result of Your violation of the above-referenced statutes, the Clients sustained injury.

As to California in particular, you have violated the California Consumers Legal Remedies Act (1) representing that the Sneakers had certain characteristics that they did not have, in violation of Cal. Civ. Code § 1770(5); (2) representing that the Sneakers was of a certain standard or quality when it was not, in violation of Cal. Civ. Code § 1770(7); and (3) advertising the Sneakers with an intent not to sell them as advertised, in violation of Cal. Civ. Code § 1770(9). As a result of Your violation of the California Consumers Legal Remedies Act, Mr. Cristostomo sustained injury.

On behalf of the Clients and the Class, we hereby demand that You immediately (1) cease and desist from continuing to represent the Sneakers as "Made in USA," and (2) make full restitution to all purchasers who purchased Sneakers You wrongfully designated as "Made in USA."

We also demand that New Balance preserve all documents and other evidence which refers or relates to any of the above-described practices including, but not limited to, the following:

1.    All documents concerning the manufacturing, labeling, and packaging processes for New Balance Sneakers;

2.    All documents concerning the pricing, advertising, marketing, and/or sale of the Sneakers by New Balance;

3.    All documents concerning New Balance's communications with the Federal Trade Commission and other federal and state regulators regarding Your "Made in USA" representations;

4.    All documents concerning any research done by New Balance or any third party on behalf of New Balance regarding the "Made in USA" representation, including but not limited to the value of the representation and the effect of the representation on sales and consumer perception.

5.      All documents concerning how New Balance determines which goods to designate as "Made in USA"; and

6.      All documents concerning the total sales of the Sneakers and total revenue and profits derived from sales of the Sneakers.

If You contend that any statement in this letter is inaccurate in any respect, please provide us with Your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if You wish to discuss an appropriate way to remedy this matter.  If I do not hear from You promptly, I will take that as an indication that You are not interested in doing so.

Very truly yours,

L. Timothy Fisher

**EXHIBIT 2**

## **CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, James J. Reardon, Jr., declare as follows:

1.      I am counsel for Plaintiffs, and I am a partner at Reardon Scanlon LLP.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) because Defendant in this action, New Balance Athletics, Inc., maintains its principal place of business in this District and a substantial part of the events or omissions giving rise to these claims occurred in this District.

3.      Plaintiff Matthew Cristostomo alleges that in November 2021, he purchased New Balance sneakers, including sneaker models 990 in June 2021 and 993  in November 2021 (the "Sneakers"), from a New Balance Outlet near his home in Chula Vista, California.  *See* Compl. ¶ 7.  Plaintiff Cristostomo further alleges that he purchased the Sneakers based on the understanding that the Sneakers were "Made in the USA."  Moreover, Plaintiff alleges that that his belief that the Sneakers were "Made in the USA" was a substantial factor in his decision to purchase the Sneakers.  Had Defendant disclosed that the Sneakers were not made in the United States, as that term is understood by reasonable consumers and federal regulations, Plaintiff Cristostomo alleges that he would not have purchased the Sneakers, or would have paid substantially less for them.

I declare under the penalty of perjury under the laws of the United States, the State of California, the State of Massachusetts, and the State of Connecticut that the foregoing is true and correct.  Executed on December 20, 2021 in West Hartford, Connecticut.

                                                    /s/ *James J. Readon, Jr.*
                                                    James J. Readon, Jr.