# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MATTHEW CRISTOSTOMO, ANTHONY BOLLINI, SPENCER VERRILLA, DERRICK EVANS, CLIFTON BRADLEY, and ROBERT KAMINSKY, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>NEW BALANCE ATHLETICS, INC.,<br><br>        Defendant. | Civil Action No. 1:21-CV-12095-FDS |

## DEFENDANT NEW BALANCE ATHLETICS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT AND TO STRIKE CERTAIN CLASS ALLEGATIONS

## **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ............................................................................. 1

II.   BACKGROUND ................................................................................................. 2

    A.  New Balance Makes Millions Of Pairs Of Shoes In American Facilities .......................... 3

    B.  To Resolve A Prior Class Action, New Balance Agreed To Court-Ordered Injunctive Relief Requiring Detailed Specification Of Product Origin. ............................................. 3

    C.  Plaintiffs Bring This Follow-On Lawsuit, Ignoring New Balance's Prominent Qualifications Of "Made in USA" Statements. .............................................................. 6

III.  LEGAL STANDARD ......................................................................................... 9

IV.  ARGUMENT .................................................................................................. 10

    A.  Plaintiffs Fail To State A Plausible Claim Because They Do Not And Cannot Contest New Balance's Compliance With Court-Ordered Measures That Properly Qualify Any "Made In USA" Statements. ...................................................................................... 10

    B.  Plaintiffs' Fraud-Based Claims Fail For The Additional Reason That Plaintiffs Cannot Satisfy Rule 9(b)'s Requirements .......................................................................... 14

    C.  Plaintiffs' Warranty-Based Claims Fail For The Additional Reason That Plaintiffs Fail to Plead A Warranty Or Actionable Breach. ........................................................... 16

    D.  Plaintiffs' Class Definitions Should Be Struck. .................................................... 18

V.   CONCLUSION ............................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................9, 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................................................11

*Brown v. Nationscredit Fin. Servs. Corp.*,
   32 So. 3d 661 (Fla. Dist. Ct. App. 2010.................................................................20

*Brown v. Showtime Networks, Inc.*,
   394 F. Supp. 3d 418 (S.D.N.Y. 2019)...................................................................13

*Collette v. Sig Sauer, Inc.*,
   No. 21-11392-FDS, 2021 WL 6052613 (D. Mass. Dec. 21, 2021) ........................18

*Collins v. PJW Servs., LLC*,
   No. A-1437-19, 2021 WL 3136127 (N.J. Super. Ct. App. Div. July 26, 2021) ....................20

*Dashnaw v. New Balance Athletics, Inc.*,
   No. 17-cv-159-L(JLB), 2018 WL 6168272 (S.D. Cal. Nov. 26, 2018)................................12

*Dashnaw v. New Balance Athletics, Inc.*,
   No. 17-cv-159-L(JLB), 2019 WL 313079 (S.D. Cal. Jan 24, 2019) ........................6

*Dashnaw v. New Balance Athletics, Inc.*,
   No. 17-cv-159-L(JLB), 2019 WL 3413444 (S.D. Cal. July 29, 2019)..............................6, 11

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006).............................................................................................12

*Floyd v. Am. Honda Motor Co.*,
   966 F.3d 1027 (9th Cir. 2020) .............................................................................19

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982).............................................................................................10

*Highway Sales, Inc. v. Blue Bird Corp.*,
   559 F.3d 782 (8th Cir. 2009) ...............................................................................19

*In re Sears, Roebuck & Co.*,
  No. MDL-1703, 05 C 4742, 05 C 2623, 2006 WL 1443737(N.D. Ill. May 17,
  2006) .............................................................................................................................17, 18

*Juarez v. Select Portfolio Servicing, Inc.*,
  708 F.3d 269 (1st Cir. 2013) .......................................................................................... 15

*Kaufman v. Joseph*,
  No. CV 16-11961-NMG, 2017 WL 2407258 (D. Mass. June 1, 2017)...................................19

*Kowalski v. Gagne*,
  914 F.2d 299 (1st Cir. 1990) ......................................................................................4, 10

*Lifeway Foods, Inc. v. Millenium Prods., Inc.*,
  No. CV 16-7099-R, 2016 WL 7336721 (C.D. Cal. Dec. 14, 2016) ......................................19

*Lister v. Bank of Am., N.A.*,
  790 F.3d 20 (1st Cir. 2015) ........................................................................................9, 13

*Manning v. Boston Med. Ctr. Corp.*,
  725 F.3d 34 (1st Cir. 2013) .......................................................................................10, 18

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ........................................................................................19

*Monteferrante v. Williams-Sonoma, Inc.*,
  241 F. Supp. 3d 264 (D. Mass. 2017) .............................................................................19

*Morse v. Fisher Asset Mgmt., LLC*,
  206 A.3d 521 (Pa. Super. Ct. 2019)...............................................................................20

*MSP Recovery Claims, Series LLC and Series 17-04-631 v. Plymouth Rock
  Assurance Corp.*,
  404 F. Supp. 3d 470 (D. Mass. 2019) ...................................................................10, 18, 19

*Mulder v. Kohl's Dep't Stores, Inc.*,
  865 F.3d 17 (1st Cir. 2017)..........................................................................................9, 14

*Rodi v. S. New England Sch. of Law*,
  389 F.3d 5 (1st Cir. 2004)..........................................................................................2, 3, 8

*Rosario v. M.D. Knowlton Co.*,
  767 N.E.2d 1126 (Mass. App. Ct. 2002..........................................................................19

*Siebring v. Hansen*,
  346 F.2d 474 (8th Cir. 1965) ........................................................................................11

*Taupier v. Davol, Inc.*,
 490 F. Supp. 3d 430 (D. Mass. 2020) ..................................................................................16

*Thout v. Deutsche Bank Nat'l Trust Co.*,
 369 F. Supp. 3d 318, 323 (D. Mass. 2019) ..........................................................................15

*Wai Chu v. Samsung Elecs. Am., Inc.*,
 No. 1:18-CV-11742-GHW, 2020 WL 1330662 (S.D.N.Y. Mar. 23, 2020) ..........................20

*Wilson v. HSBC Mortg. Servs., Inc.*,
 744 F.3d 1 (1st Cir. 2014) .....................................................................................................9

**Statutes**

15 U.S.C. § 2301 ............................................................................................................................17

15 U.S.C. § 2310 ............................................................................................................................19

Cal. Bus. & Prof. Code § 17208 ...................................................................................................19

Cal. Civ. Code § 1783 ...................................................................................................................19

Michigan Compl. Laws § 445.911(9) ...........................................................................................19

U.C.C. § 2-313 .........................................................................................................................16, 18

**Other Authorities**

Fed. R. of Civ. P. 9(b) ......................................................................................................2, 9, 14-15

Fed. R. Civ. P. 23(b)(3) .................................................................................................................19

I.     **PRELIMINARY STATEMENT**

Plaintiffs are hiding the ball.  The six named Plaintiffs in this class action all claim to have purchased, between January 2019 and November 2021, shoes sold by Defendant New Balance. They allege that these shoes "prominently claim to be 'Made in USA'," despite the fact that some of them "have as much as 30% of their components made outside of the United States."   Compl. ¶ 2, ECF No. 1.  Plaintiffs seek to certify a sprawling nationwide class as well as six state-law subclasses of anyone—apparently at any time—who purchased certain models of New Balance shoes.  And they assert claims sounding in breach of warranty, violation of consumer protection law, fraud, and false advertising.

But this case has already happened.  New Balance was previously sued in California federal court in *Dashnaw v. New Balance Athletics, Inc.*  That case raised precisely the same legal theories based on precisely the same conduct purportedly at issue here.  Even before *Dashnaw*, New Balance included qualifications of its "Made in USA" statements to reflect the foreign manufacture of certain components.  And to resolve *Dashnaw*, New Balance agreed to injunctive relief—operative by January 2019—requiring it to take still additional steps to ensure that the qualification "domestic value of 70% or greater" is prominent enough to be seen by all consumers.  Plaintiffs do not allege New Balance's noncompliance with the injunction, thus implicitly conceding that New Balance makes all required qualifications to provide consumers with complete and accurate information.  But neither do Plaintiffs allege that these qualified Made in USA statements are themselves actionable.  They just reassert the very same contentions advanced in *Dashnaw* while disregarding the obvious—and judicially-noticeable—reality that that case resulted in a binding federal court injunction, properly issued upon a court's determination that it would afford adequate relief to the class members in *Dashnaw* and the public at large.

1

Plaintiffs' complaint should be dismissed. Because it fails to address the *Dashnaw* injunction and its legal effects, the complaint neither states a plausible claim nor adequately apprises New Balance of the nature of the challenged conduct. Plaintiffs' claims also fail for other reasons. Their fraud-based claims fail to plausibly allege either falsity or fraudulent intent—particularly in light of New Balance's good-faith compliance with the *Dashnaw* injunction—and fail to allege fraud with the particularity required under Federal Rule of Civil Procedure 9(b).[1] Plaintiffs' warranty-based claims fail to plead any breach of the statement that New Balance's products have "domestic value of 70% or greater," and their Magnuson-Moss Warranty Act claim does not even plead a "written warranty" as that term is defined. And Plaintiffs' class allegations must be struck in all events because the class definitions are overbroad and certain to contain class members whose claims are time-barred.

New Balance has already litigated this class action once, agreeing to steps that ensure that all of its "Made in USA" representations are appropriately qualified in a manner to give accurate disclosure to all consumers nationwide. If future plaintiffs could simply ignore such wide-ranging relief in pursuit of follow-on class actions like this one, it would discourage defendants from settling such litigations at all. Consumers and defendants alike would be worse off. And the courts would be clogged with discovery in speculative class actions that have no grounding in reality. The motion should be granted.

## II.   **BACKGROUND**

All material aspects of the factual background recited below are drawn from the Complaint in this action; "materials fairly incorporated within it"; and matters of public record on the docket of *Dashnaw*, of which this Court may take judicial notice, *Rodi v. S. New England Sch. of Law*,

---

[1] All further references to Rules are to the Federal Rules of Civil Procedure.

389 F.3d 5, 12 (1st Cir. 2004).

### A.  New Balance Makes Millions Of Pairs Of Shoes In American Facilities.

Established in 1906, New Balance is a Boston-based seller of athletic shoes and apparel. Compl. ¶ 13; *see generally* New Balance, *Responsible Leadership - Who We Are – Our Heritage*, https://www.newbalance.com/responsible-leadership/who-we-are.html?id=oh (last visited Feb. 21, 2022).  For more than 75 years, New Balance has maintained manufacturing, production, and distribution facilities in New England.  Those facilities employ approximately 1,000 American workers and produce millions of shoes each year.  *Id.*; New Balance, *Responsible Leadership – Owned Manufacturing – Made. American.*, https://www.newbalance.com/responsible-leadership/owned-manufacturing.html#ov (last visited Feb. 21, 2022).

New Balance takes great pride in its continued commitment to American workers— especially at a time when virtually all of its competitors have long-since moved the entirety of their production operations overseas.  And although New Balance must maintain some of its own operations abroad in order to compete, it continues to feature footwear that is manufactured in its American facilities.  *E.g.*, Compl. ¶¶ 19-27.  Customarily, sneakers in these lines may include indications like "Made in U.S.A." on the labels on either side of the tongues of the shoes, or on the shoe box.  Compl. ¶¶ 20-24, 26-27.  New Balance also touts the domestic origins of these shoes on its website.  Compl. ¶ 25.  Although all of these shoes are manufactured in New Balance's U.S.-based facilities, some components of some of the shoes—for example, the soles—are made abroad, imported, and ultimately incorporated into the shoe in the U.S.  Compl. ¶ 35.

### B.  To Resolve A Prior Class Action, New Balance Agreed To Court-Ordered Injunctive Relief Requiring Detailed Specification Of Product Origin.

In late 2016, three named plaintiffs brought a putative class action against New Balance that was litigated in federal district court in the Southern District of California, *Dashnaw v. New*

*Balance Athletics, Inc.*, No. 3:17-cv-00159-L-JLB (S.D. Cal.).[2]  The *Dashnaw* complaint alleged the same conduct that is alleged in this lawsuit.  Specifically, it alleged that "New Balance … advertises that its shoes are made in the USA … even when up to 30 percent of the value of the shoes is attributable to foreign-made components and/or labor."  Puzella Decl., Ex. 1 at ¶ 2 (First Amended Complaint ¶ 2, *Dashnaw*, ECF No. 16 (Feb. 20, 2017) ("*Dashnaw* Compl.").  It highlighted "Made in U.S.A." representations on the tongues of New Balance shoes, on shoe boxes, and on New Balance's website.  *Id.* at ¶¶ 25-28.  And it alleged that "[t]here are no qualifications or disclosures regarding the Made in the USA claim[s]."  *Id.* at ¶¶ 26-28.

The *Dashnaw* plaintiffs alleged various California state-law causes of action, sounding in California's False Advertising Law, Consumer Legal Remedies Act, Unfair Competition Law, Cal. Bus. & Prof. Code § 17533.7 concerning "Made in the U.S.A." statements, breach of express warranty, negligent misrepresentation, and unjust enrichment and restitution.  *Id.* at 14-23.  And plaintiffs sought to certify a class of "All persons located within the State of California who purchased any New Balance shoe model labeled or advertised as made in the United States at any time beginning four (4) years prior to the filing of this action … and ending at the time this action settles or proceeds to final judgment."  *Id.* ¶ 43.

After over a year of discovery, and full briefing on the *Dashnaw* plaintiffs' motion to certify their putative class and on New Balance's motion for judgment on the pleadings, the parties reached a settlement.  New Balance conceded no liability and maintained throughout the case, without dispute, that it was already qualifying its "Made in USA" claims.  Puzella Decl. Ex. 2 (*Dashnaw*, ECF No. 73 at 4 (New Balance's Opposition to Class Certification).  But to ensure

---

[2] We cite items from the docket in this action *Dashnaw*, ECF No. X.  The contents of these records are judicially noticeable.  *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990).

utmost accuracy and avoid further litigation, New Balance agreed to both $750,000 in monetary payments and injunctive relief that would ensure that all qualifications would be visible to all consumers. *See* Puzella Decl., Ex. 3 (Amended Settlement Agreement, *Dashnaw*, ECF No. 117-3 (June 21, 2019) (*Dashnaw* Settlement).

Specifically, the settlement called for forward-looking injunctive relief requiring New Balance, "for all 'Made in USA' Shoes … which contain less than 95% U.S. content," to:

- Remove the phrase "Made in the USA" from the front of hangtags[3] on the footwear;

- Include on the back of the hangtag, "in clear readable font," the sentence "New Balance 'made' is a premium collection that contains domestic value of 70% or greater … unless and until a change in either federal or California law obviates the need for such clarification."

- Remove the phrase "Made in the USA" from the top of shoe boxes.

- Qualify any representations on the side of shoe boxes with the same qualification above concerning "domestic value of 70% or greater unless and until a change in either federal or California law obviates the need for such clarification."

- Qualify any representations on New Balance's website with the same qualification concerning "domestic value of 70% or greater," including accompanying "all banners saying 'Made in USA' or displaying a "Made in USA' shoe where the 'Made in USA' label is showing," "the 'Made in USA' Shoe landing page," and "all individual product display pages containing a 'Made in USA' Shoe."

Puzella Decl., Ex. 3, *Dashnaw* Settlement at 12-14.

---

[3] A "hangtag" is "a tag attached to an article of merchandise giving information about its material and proper care." Merriam-Webster, "hangtag," http://merriam-webster.com/dictionary/hangtag (last visited, Feb. 21, 2022).

After twice denying the plaintiffs' motion to approve the settlement in order to ensure that it adequately served the public interest, the district court certified a settlement class and approved the settlement on January 24, 2019. *See Dashnaw v. New Balance Athletics, Inc.*, No. 17-cv-159-L(JLB), 2019 WL 313079, at *1-2 & n.1 (S.D. Cal. Jan 24, 2019); *see also* Puzella Decl. Ex. 4 (Order Granting Second Renewed Motion for Preliminary Approval of Settlement). In doing so, the district court found that the relief agreed to by New Balance was "fair, reasonable, and adequate" under Rule 23. *See Dashnaw v. New Balance Athletics, Inc.*, No. 17-cv-159-L(JLB), 2019 WL 3413444, at *14 (S.D. Cal. July 29, 2019); *see also* Puzella Decl. Ex. 5 (Order Granting Motion for Final Class Action Settlement Approval). No class member objected to the adequacy of this injunctive relief before the district court approved it. *Id.* at *5. And the *Dashnaw* docket reflects that no class member has ever returned to the district court to claim that New Balance has failed to comply with the injunction.

### C.   Plaintiffs Bring This Follow-On Lawsuit, Ignoring New Balance's Prominent Qualifications Of "Made in USA" Statements.

Plaintiffs brought this materially identical case on December 20, 2021. It is based on the same factual allegations advanced in *Dashnaw*—that "New Balances sells several models of footwear that prominently claim to be 'Made in USA,'" despite "hav[ing] as much as 30% of their components made outside the United States." Compl. ¶ 2. Like the *Dashnaw* plaintiffs, Plaintiffs here highlight statements on the shoes themselves, the shoe boxes, and the New Balance website. Compl. ¶¶ 20-27. And Plaintiffs here advance the same legal theories at issue in the California state causes of action in *Dashnaw*, bringing claims under various sources of state and federal law for breach of warranty, unjust enrichment, fraud, false advertising, unfair competition, and

violation of consumer protection statutes.[4]  Compl. ¶¶ 65-206.

In addition, Plaintiffs include class allegations that allege a nationwide class of "all persons in the United States who purchased the sneakers," as well as state subclasses of purchasers in California, Michigan, Pennsylvania, New Jersey, Florida, and New York.  Compl. ¶¶ 51-57.  With one exception, the nationwide class and state subclasses contain no time limitation—they purport to embrace every purchaser of the footwear at issue ever.  *Id.*  The exception is the California subclass, which includes only purchasers after January 24, 2019—the date the district court approved the *Dashnaw* settlement.  Compl. ¶ 52.

Apart from that implicit acknowledgement of *Dashnaw*, Plaintiffs confine their discussion of the case to a single paragraph stating that New Balance "previously entered into a class action settlement" but stating that New Balance "continues to make false and misleading 'Made in the USA' claims on its Sneakers."  Compl. ¶ 38.  Plaintiffs do not allege New Balance's noncompliance with the injunction in *Dashnaw* in any respect.  Instead, they elliptically refer to the court-ordered qualifications New Balance now includes, labeling them "disclaimers" and deriding them as "small print language on the underside of a packaging or hid in assorted places on a website."  Compl. ¶ 40.  Without reprinting or depicting the qualifications in any way, Plaintiffs simply allege in conclusory fashion that "no reasonable consumer would expect" or

---

[4] The counts are: (I) Breach of Express Warranty; (II) Violation of the Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et. seq.*; (III) Unjust Enrichment; (IV) Fraud; (V) Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; (VI) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et. seq.*; (VII) Violation of California's False Advertising Law, Cal Bus. & Prof. Code §§ 17500, *et. seq.*; (VIII) Violation of the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.903, *et seq.*; (IX) Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*; (X) Violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§56:8-1, *et seq.*; (XI) Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Sta. §§501.201, *et seq.*; (XII) Violation of the New York General Business Law § 349; and (XIII) Violation of the New York General Business Law § 350.

understand them.  *Id.*  They also claim that "the shoes themselves" do not contain qualified statements, despite *Dashnaw*'s required qualified statements on the shoe's hangtags and Plaintiffs' conspicuous failure to allege noncompliance with that requirement.  *Id.* ¶ 39.

In at least one instance, however, material that is fairly incorporated into the complaint confirms New Balance's compliance with the *Dashnaw* injunction.  Plaintiffs rest a portion of their claims on New Balance's website—including a screenshot of the "Footwear Made in the USA" page—thereby incorporating the relevant aspects of the website into the complaint, *Rodi*, 389 F.3d at 12.  *See* Compl. ¶ 25; New Balance, *Footwear Made in the USA,* http://newbalance.com/made-in-the-usa/?ICID=LP-LP_MADE_10802_MW (last visited Feb. 16, 2022).  Plaintiffs' artful screenshot of the "Footwear Made in the USA" page omits the following qualified statement in the first paragraph of copy on that very page, in the same-sized typeface as the other text on the page: "Meet the New Balance MADE Collection, a premium selection of New Balance shoes that contain a domestic value of 70% or greater."  *Id.*; *see also* Puzella Decl. Ex. 7 (reprinting web page).  Similarly, Plaintiffs omit the repetition of the qualifications on each product page linked from the page they screenshot, which state either (or both) of the following: "Manufactured in the US for over 75 years and representing a limited portion of our US sales, New Balance Made is a premium collection that contains domestic value of 70% or greater," or "New Balance Made contains a domestic value of 70% or more. Made makes up a limited portion of New Balance's US sales."  Puzella Decl. Ex. 8 (reprinting representative product pages).

These types of statements are what FTC regulations—which Plaintiffs themselves cite in the Complaint (at ¶ 30 n.3)—define as "Qualified U.S. Origin Claims."  *See* Federal Trade Comm'n, *Enforcement Policy Statement on U.S. Origin Claims* (Dec. 1, 1997), http://www.ftc.gov/public-statements/1997/12/enforcement-policy-statement-us-origin-claims

("FTC Enforcement Statement").  Plaintiffs nevertheless contend that New Balance engages in "knowing[] and intentional[]" violation of FTC regulations concerning *unqualified* Made in USA claims.  Compl. ¶¶ 30-32.  They seek damages of up to $500 per pair of shoes, unspecified injunctive relief, and attorneys' fees.  Compl. 43-44.

## III.   LEGAL STANDARD

*Motion to Dismiss.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Dismissal for failure to state a claim is appropriate if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Lister v. Bank of Am., N.A.*, 790 F.3d 20, 23 (1st Cir. 2015) (citing *Lemelson v. U.S. Bank Nat'l Ass'n*, 721 F.3d 18, 21 (1st Cir. 2013)).  Although the complaint is construed "in the light most favorable to the [plaintiffs]," the court need not "take every single allegation at face value."  *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir. 2014).  The court can "consider documents incorporated by reference into the complaint and matters of public record," and may "disregard facts which have been conclusively contradicted by [plaintiffs'] concessions or otherwise."  *Lister*, 790 F.3d at 23 (internal quotation marks omitted) (alteration in original).  Moreover, for any "general claims of fraud and … associated claims … where the core allegations effectively charge fraud," a plaintiff must additionally satisfy the heightened particularity requirements of Rule 9(b).  *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21-22 (1st Cir. 2017) (internal citations and quotations omitted).

*Motion to Strike.*  Under Rule 12(f), a "court may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter."  In a putative class action, "[s]ometimes the issues are plain enough from the pleadings" to determine whether the class treatment proposed by the

named plaintiffs is appropriate. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). "If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under [Rule] 12(f) to delete the complaint's class allegations." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 60 (1st Cir. 2013) (internal citations omitted); *see MSP Recovery Claims, Series LLC and Series 17-04-631 v. Plymouth Rock Assurance Corp.*, 404 F. Supp. 3d 470, 484-85 (D. Mass. 2019) (identifying circumstances in which striking class allegations is appropriate).

## IV.  ARGUMENT

### A.  Plaintiffs Fail To State A Plausible Claim Because They Do Not And Cannot Contest New Balance's Compliance With Court-Ordered Measures That Properly Qualify Any "Made In USA" Statements.

The complaint fails in its entirety because its foundational contention—that New Balance knowingly and intentionally makes unqualified claims that products are "Made in USA."—is contradicted by facts contained in the complaint, materials incorporated into the complaint, and materials of which the Court may take judicial notice. It is beyond dispute that New Balance is subject to ongoing, nationwide injunctive relief requiring prominent qualification of its Made in USA statements to notify consumers of the nature of its domestic manufacturing. In the face of that indisputable reality, Plaintiffs' failure and inability to plead either New Balance's non-compliance with the injunction or to plead claims based on the qualified statements the injunction requires leaves Plaintiffs with no plausibly articulated claim.

The fact of the *Dashnaw* injunction and the legal effect of that ruling are properly before the Court in this motion to dismiss, and they are irrefutable. *Kowalski*, 914 F.2d at 305 (noting that it is "well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand"). As explained above (at 6-7), the *Dashnaw* plaintiffs brought virtually the same lawsuit Plaintiffs bring here, purporting to challenge

the use of the phrase "Made in USA," allegedly without qualification.  After discovery and "aggressive[] litigat[ion]"—which in fact demonstrated that New Balance was already qualifying any "Made in USA" statements—New Balance agreed to undertake still further steps to ensure that all consumers would be accurately notified of the nature of New Balance's domestic manufacturing.  This included removal of "Made in USA" statements in some instances and further qualifications in others.  *Dashnaw*, 2019 WL 3413444 at *6, 12; *see also* Puzella Decl. Ex. 5 (Order Granting Motion for Final Class Action Settlement Approval)

This district court's approval of that relief and entry of an injunction carries several necessary legal implications.  To begin with, the entry of a consent decree is a judicial act that "possesses the same force and character as a judgment rendered following a contested trial." *Siebring v. Hansen*, 346 F.2d 474, 477 (8th Cir. 1965).  Because *Dashnaw* was a class action, moreover, the district court could approve the injunction only after a fairness hearing and a determination that the settlement was "fair, reasonable and adequate"—an inquiry that the district court conducted, per Ninth Circuit law, with an "even higher level of scrutiny" because settlement was reached before the class was certified.  *Dashnaw*, 2019 WL 3413444 at *6 (applying *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011)); Puzella Decl. Ex. 5 (Order Granting Motion for Final Class Action Settlement Approval).

In the context of a case alleging false advertising, moreover, the district court's finding that New Balance's undertakings were adequate protected not only class members, but the public. False advertising by definition—and, accordingly, as pled in *Dashnaw*—implicates communications made by the defendant to the public at large.  So too, of course, the *Dashnaw* injunction prospectively commands the alteration of the content of those communications "for all 'Made in USA' Shoes."  Puzella Decl., Ex. 3, *Dashnaw* Settlement at 12.  Throughout the

settlement approval process, the district court in *Dashnaw* was keenly focused on the public interest, initially denying the parties' proposed *cy pres* award absent a demonstration that the "funds [would be] distributed for the purpose of protecting consumers from, or redressing injuries caused by, false advertising."   *Dashnaw v. New Balance Athletics, Inc.*, No. 17-cv-159-L(JLB), 2018 WL 6168272, at *1 (S.D. Cal. Nov. 26, 2018) (internal quotation marks omitted); *see also* Puzella Decl. Ex. 6 (Order Denying Plaintiffs' Renewed Motion for Preliminary Approval of Class Certification).   And of course, the appropriateness of any injunctive relief turns in part on the consideration that "the public interest would not be disserved" by the injunction.   *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

At a minimum, then, the *Dashnaw* injunction represents a binding, duly issued judicial order requiring future undertakings that presumptively address the legal wrongs alleged in that case.   And because of the injunction's obvious factual and legal significance to the alleged course of conduct in this case, the plausibility of Plaintiffs' factual allegations depends heavily on how they address New Balance's compliance with its undertakings.   Otherwise, Plaintiffs are alleging that the room is empty without addressing the elephant in the corner.

Yet Plaintiffs say scarcely a thing on this topic, including only the vague acknowledgment that New Balance "previously entered into a class action settlement."   Compl. ¶ 38.   Plaintiffs do not allege New Balance's noncompliance with the *Dashnaw* injunction—a consequential omission, since New Balance's compliance is readily ascertainable by simply evaluating the content and context of New Balance's public "Made in USA" statements.   The only plausible inference one could draw from this omission is that New Balance is indeed fully in compliance, for example, by including its "domestic value of 70% or greater" statement on its shoes and website.   This in turn means that, as a matter of law, New Balance makes only what the FTC treats

as "Qualified U.S. Origin Claims"—like the FTC's own paradigmatic example, "60% U.S. content." FTC Enforcement Statement. But Plaintiffs do not even attempt to allege that New Balance runs afoul of regulations pertaining to such qualified statements.

Indeed, Plaintiffs do not seriously attempt to state *any* claim based on the *qualified* statements New Balance makes as ordered by the *Dashnaw* injunction. At times, Plaintiffs seem to suggest that New Balance's disclosures are in "small print language," "hid[den]," or not on "the shoes themselves." Compl. ¶ 39-40. But these are simply not plausible contentions in a Complaint that fails to allege New Balance noncompliance with the *Dashnaw* injunction, which requires qualifications "in clear readable font" and on hangtags on the footwear itself. Puzella Decl., Ex. 3, *Dashnaw* Settlement at 12-14. What is more, Plaintiffs base their claims in part on screenshots of New Balance's website—thereby incorporating it by reference—and that website flatly belies any notion that New Balance's qualifications are hidden or in small typeface. *Supra* at 8; *see Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 436 (S.D.N.Y. 2019) (where film was incorporated in complaint, court "consider[ed] the film itself—not the parties' characterizations of what it shows"). So not only are Plaintiffs' contentions implausible, they are "conclusively contradicted" and therefore entitled to no weight. *Lister*, 790 F.3d at 23.

Plaintiffs' final tactic is to suggest that New Balance's qualification "domestic value of 70% or greater" is "not curative" because New Balance "does not define the term 'domestic value.'" Compl. ¶¶ 40-41. But critically, Plaintiffs do not and cannot allege that New Balance's qualification is false, or even that a reasonable consumer would fail to appreciate it as a qualification of the "Made in U.S.A." statement. Just as importantly, Plaintiffs do not allege that New Balance violates the FTC's requirements for Qualified U.S. Origin Claims, instead claiming only that New Balance violates regulations for *unqualified* claims. Nor could they, because there

is no conceivable argument that New Balance's "domestic value" qualification is any more vague than the FTC's paradigmatically permissible qualification of "65% U.S. Content."  Plaintiffs thus offer no coherent theory of what New Balance represents and what Plaintiffs' allegedly relied upon, leaving New Balance without fair notice of the claims against it.

In short, each of Plaintiffs' claims fails because each is predicated on the implausible (and contradicted) tale that New Balance—despite compliance with binding, nationwide injunctive relief—makes unqualified Made in USA claims.  Plaintiffs cannot survive a motion to dismiss by pretending that the *Dashnaw* injunction and its real-world effects do not exist.

**B.**     **Plaintiffs' Fraud-Based Claims Fail For The Additional Reason That Plaintiffs Cannot Satisfy Rule 9(b)'s Requirements.**

Most of Plaintiffs' claims fail for the additional, independent reason that Plaintiffs have failed to satisfy Rule 9(b)'s particularity requirement.  It is well-settled in the First Circuit that Rule 9(b) applies not only to "general claims of fraud" but also to "associated claims … where the core allegations effectively charge fraud."  *Mulder*, 865 F.3d at 21-22.  In *Mulder*, for example, the First Circuit applied Rule 9(b) to claims under statutory consumer protection law, fraud, breach of contract, and unjust enrichment theories because all were based on the plaintiffs' allegation that "she was 'deceived by … advertising."  *Id.* at 21.  Similarly, Plaintiffs' claims of unjust enrichment, fraud, and violation of various consumer protection or unfair competition laws are all predicated on "Made in USA" statements made by New Balance with allegedly deceptive intent. Compl. ¶¶ 82-203 (counts III-XIII).  (The exceptions are Plaintiffs' warranty-based claims, counts I and II, which fail for additional independent reasons of their own.  *Infra* 16-18.)  Plaintiffs fail to plead a viable claim under Rule 9(b) for several reasons.

*First*, Plaintiffs fail to plead with particularity the content of New Balance's representations by which they were, allegedly, deceived.  A fraud-based claim must "include specifics about the

time, place, and content of the alleged false representations." *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 280 (1st Cir. 2013) (internal citations and quotations omitted).  But Plaintiffs are demonstrably hiding the ball about the content of New Balance's representations at particular times and in particular contexts.  Which advertising claims did Plaintiffs observe?  Did the named plaintiffs in this case observe the qualifications ordered by the *Dashnaw* injunction and not understand them?  Are they alleging that the qualifications were not there at all?  If so, on what dates, and in what locations, are Plaintiffs claiming the qualifications ordered in *Dashnaw* were not included?  Without the particulars of what representations Plaintiffs allege they relied upon, New Balance cannot possibly have fair notice of the basis of the claims.  And this problem is only compounded by Plaintiffs' putative class action, which threatens to devolve into thousands of minitrials about who relied on what and when.

Instead of the particularity required, Plaintiffs generally plead that "Defendant provided Plaintiffs and members of the Classes with false or misleading material information about the Sneakers, ***including but not limited*** to the fact that the Sneakers were 'Made in the USA.'"  Compl. ¶ 89 (emphasis added).  "Including but not limited to" does not come close to satisfying Rule 9(b)'s particularity requirement.  In *Thout v. Deutsche Bank Nat'l Trust Co*., plaintiff "specifie[d] one alleged instance *'[a]mong others'* of a 'concerted pattern of actions designed to fraudulently confuse and obfuscate [its] actions and Plaintiff's rights and responsibilities."  369 F. Supp. 3d 318, 323 (D. Mass. 2019) (emphasis in original) (internal citation omitted) (alterations in original).  The court determined that, "[s]ufice to say," the plaintiff "failed to plead fraud with particularity."  *Id*.

*Second*, Plaintiffs fail to allege that New Balance's *qualified* representations are false.  Because Plaintiffs neither contest that New Balance is in full compliance with the *Dashnaw*

injunction nor specifically describe how New Balance's qualified representations are inaccurate, they fail to allege that these qualifications are actually false.

And *third*, for similar reasons, Plaintiffs cannot plausibly allege intent.  It is implausible that New Balance—having qualified its statements in accordance with the *Dashnaw* injunction and remaining fully in compliance with those undertakings—simultaneously harbors the intent to deceive customers and induce their reliance on its qualified statements.  And while Plaintiffs include conclusory allegations that New Balance "intentionally ma[de] false and misleading statements," they offer nothing to make that contention *plausible*.  Although "intent … may be alleged generally," a plaintiff may not "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Iqbal*, 556 U.S. at 687.

 The fraud-based claims (counts III through XIII) should therefore be dismissed.

### C.   Plaintiffs' Warranty-Based Claims Fail For The Additional Reason That Plaintiffs Fail to Plead A Warranty Or Actionable Breach.

Plaintiffs' warranty claims (counts I and II) fail for additional independent reasons.

***U.C.C. § 2-313.***  Plaintiffs appear to allege claims under one or more state-law versions of U.C.C. § 2-313, which applies to express warranties.  Section 2-313 applies to "any affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain."  A breach of express warranty claim is therefore "an action in contract." *Taupier v. Davol, Inc.*, 490 F. Supp. 3d 430, 437 (D. Mass. 2020) (internal quotation marks omitted).  To sustain a claim, "the plaintiff must demonstrate that the defendant promised a specific result and that defendant failed to deliver on his promise." *Id.* (internal quotation marks omitted).

Plaintiffs have not plausibly alleged a § 2-313 claim.  While they contend that New Balance "expressly warranted that the Sneakers were 'Made in the USA,' as that term is defined by the

FTC," Compl. ¶ 67, they concede that any such contentions were accompanied by a "disclaimer" that the shoes "contain[ed] a domestic value of 70% or greater," Compl. ¶ 39. If the former statement qualifies as an express promise forming the basis of the bargain, so necessarily does the latter qualification of that statement.[5]  A plaintiff cannot pick and choose the applicable terms of an express warranty any more than it can do so for an ordinary breach-of-contract claim. And because Plaintiffs do not and cannot allege that New Balance has breached its promise of "domestic value of 70% or greater," they fail to state a claim.

     ***Magnuson-Moss Warranty Act.***  Plaintiffs' Magnuson-Moss Warranty Act (MMWA) claim fails for the same reason:  Plaintiffs concede that New Balance qualifies any alleged warranty by specifying "domestic value of 70% or greater" and do not plead breach of that statement. The claim also fails because nothing Plaintiffs plead—whether an unqualified *or* qualified "Made in USA" statement—meets the MMWA's definition of "written warranty."

      Plaintiffs' MMWA claim invokes 15 U.S.C. § 2301(6), which (as relevant here) defines a "written warranty" as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship *and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time*.

15 U.S.C. § 2301(6)(a) (emphasis added).  Plaintiffs do not allege that New Balance "affirm[ed] or promis[ed]" that its sneakers are "defect free" nor that they "will meet a specified level of performance over a specified period of time."  As the court held in *In re Sears, Roebuck & Co.*, the statement "Made in USA," is like "other product description[s] that [do] not inform the

---

[5] New Balance assumes for purposes of this motion only that Plaintiffs relied upon New Balance's statements concerning domestic origin as a part of the basis of the bargain and as a warrant of a material aspect of its footwear and reserves all rights to challenge those elements.

customer that the [product] is defect-free or make any representation about performance."  No. MDL-1703, 05 C 4742, 05 C 2623, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006).

This result accords with the great weight of authority on the scope of the MMWA.  Courts have recognized that the MMWA's definition of written warranty is "more restrictive than the definition of express warranty provided by the U.C.C."  *Collette v. Sig Sauer, Inc.*, No. 21-11392-FDS, 2021 WL 6052613, at *7 (D. Mass. Dec. 21, 2021).  And they "have been wary about expanding the definition of 'written warranty' and have narrowly construed the term."  *Id.* at *6 (internal citation omitted).  Courts routinely dismiss MMWA claims that are based on mere product description.  *See id.* (collecting cases).  And for its part, the FTC—the agency responsible for policing Made in USA claims *and* for implementing rules under the MMWA—has never suggested that Made in USA claims qualify as warranties subject to the MMWA.  *See* Federal Trade Comm'n, *Complying with the Made in USA Standard*, https://www.ftc.gov/tips-advice/business-center/guidance/complying-made-usa-standard (last visited, Feb. 21, 2022).  The MMWA claim should therefore be dismissed.

### D.     Plaintiffs' Class Definitions Should Be Struck.

Finally, this Court should strike the putative nationwide class and the Michigan, Pennsylvania, New Jersey, Florida, and New York subclasses.  Courts strike class allegations where it is "obvious from the pleadings" that they cannot form the basis for a class action. *Manning*, 725 F.3d at 60.  For example in *MSP Recovery Claims, Series LLC and Series 17-04-631 v. Plymouth Rock Assurance Corp.*, the district court struck class definitions that necessarily included time-barred claims and that could not comply with Rule 23.  404 F. Supp. 3d at 484-85. Here the class definitions are similarly defective.

*First*, the only basis for Plaintiffs' nationwide class is its MMWA claim for breach of express warranty, so if that claim fails, Plaintiffs cannot sustain a nationwide class.  It fails for the

substantive reasons discussed above (at 17-18).  And even if Plaintiffs had adequately pled a "written warranty," they fail to meet the procedural requirements for an MMWA class action.  The MMWA provides that a class action is not cognizable if "the number of named plaintiffs is less than one hundred."  15 U.S.C. § 2310(d)(3)(C).  Plaintiffs do not name 100 plaintiffs, so they fail to comply.  *See Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020) (holding that the Class Action Fairness Act does not circumvent MMWA's jurisdictional requirement of 100 named plaintiffs).

This leaves Plaintiffs with no claim common to a nationwide class.  Instead, they have only state law claims specific to six state subclasses.  Plaintiffs thus fail to plead causes of action for putative class members from the other 44 states, undermining any prospect of a nationwide class.  *See* Fed. R. Civ. P. 23(b)(3); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589-94 (9th Cir. 2012) (rejecting nationwide class that lacked a uniform common claim).

*Second*, for Plaintiffs' nationwide class and all of its subclasses besides California, they have "made no effort to provide a temporal limit on [the] class definition," *MSP Recovery*, 404 F. Supp. 3d at 485.  The state law causes of action upon which the class claims are predicated all are subject to at least some limitations period.[6]  These classes, as defined, therefore impermissibly

---

[6] *See Rosario v. M.D. Knowlton Co.*, 767 N.E.2d 1126, 1132 (Mass. App. Ct. 2002) (Mass.: 4-year limitations period for breach of warranty); *Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782, 789 n.6 (8th Cir. 2009) (MMWA incorporates the limitations period of the most analogous state law cause of action); *Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp. 3d 264, 270 n.1 (D. Mass. 2017) (Mass.: 4-year limitations period for unjust enrichment); *Kaufman v. Joseph*, No. CV 16-11961-NMG, 2017 WL 2407258, at *5 (D. Mass. June 1, 2017) (Mass.: 3-year limitations period for fraudulent misrepresentation); Cal. Civ. Code § 1783 (Cal.: 3-year limitations period for CLRA claims); Cal. Bus. & Prof. Code § 17208 (Cal.: 4-year limitations period for claims under Unfair Competition Law); *Lifeway Foods, Inc. v. Millenium Prods., Inc.*, No. CV 16-7099-R, 2016 WL 7336721 at *2 (C.D. Cal. Dec. 14, 2016) (Cal.: 3-year limitations period for false advertising); Mich. Compl. Laws 445.911(9) ("An action under [the Michigan Consumer Protection Act] shall not be brought more than 6 years after the occurrence of the method, act, or

include class members whose claims are time-barred.  "A court may strike class allegations that plainly encompass individuals whose claims are barred by jurisdictional or time limitations."  *Id.* at 484 (internal quotation marks omitted).  That is the proper result here.

## V.   CONCLUSION

For the foregoing reasons, New Balance respectfully requests that the Court grant the motion to dismiss and the motion to strike class allegations.

Dated: February 22, 2022                    Respectfully submitted

                                            /s/ Mark S. Puzella
                                            Mark S. Puzella (BBO No. 644850)
                                            mpuzella@orrick.com
                                            R. David Hosp (BBO No. 634091)
                                            dhosp@orrick.com
                                            Sheryl Garko (BBO No. 657735)
                                            sgarko@orrick.com

                                            ORRICK, HERRINGTON & SUTCLIFFE LLP
                                            222 Berkeley Street
                                            Suite 2000
                                            Boston, MA  02116-3740
                                            Telephone: 617.880.1800
                                            Facsimile:  617.880.1801

                                            *Attorneys for Defendant,*
                                            *New Balance Athletics, Inc.*

---

practice that is the subject of the action or more than 1 year after the last payment in a transaction involving the method, act, or practice that is the subject of the action, whichever period of time ends at a later date."); *Morse v. Fisher Asset Mgmt., LLC*, 206 A.3d 521, 526 (Pa. Super. Ct. 2019) (Pa.: 6-year limitations period under UTPCPL); *Collins v. PJW Servs., LLC*, No. A-1437-19, 2021 WL 3136127, at *5 (N.J. Super. Ct. App. Div. July 26, 2021) (NJ: 6-year limitations period for consumer fraud); *Brown v. Nationscredit Fin. Servs. Corp.*, 32 So. 3d 661, 662 n.1 (Fla. Dist. Ct. App. 2010) (Fla.: 4-year limitations period for FDUTPA); *Wai Chu v. Samsung Elecs. Am., Inc.*, No. 1:18-CV-11742-GHW, 2020 WL 1330662, at *9 (S.D.N.Y. Mar. 23, 2020) (N.Y.: 3-year limitations period for claims under §§ 349, 350).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2022 a copy of the foregoing is being filed electronically through the ECF system. Parties may access this filing through the Court's system.

*/s/ Mark S. Puzella*

Mark S. Puzella