**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MATTHEW CRISTOSTOMO, ANTHONY BOLLINI, SPENCER VERRILLA, DERRICK EVANS, CLIFTON BRADLEY, and ROBERT KAMINSKY, individually and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>    v.<br><br>NEW BALANCE ATHLETICS, INC.,<br><br>             Defendant. | Civil Action No. 1:21-CV-12095-FDS |

**DEFENDANT NEW BALANCE ATHLETICS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT AND TO STRIKE CERTAIN CLASS ALLEGATIONS**

## **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT .................................................................................. 1

II.  BACKGROUND ................................................................................................... 2

    A.  New Balance Makes Millions Of Pairs Of Shoes In American Facilities.........................3

    B.  To Resolve A Prior Class Action, New Balance Agreed To Court-Ordered Injunctive Relief Requiring Detailed Specification Of Product Origin. ...............................................3

    C.  Plaintiffs Bring This Follow-On Lawsuit But Fail To Address New Balance's Prominent Qualifications Of "Made in USA" Statements.......................................................6

III. LEGAL STANDARD ........................................................................................... 9

IV.  ARGUMENT ...................................................................................................... 10

    A.  Plaintiffs Fail To State A Plausible Claim Because They Cannot Contest New Balance's Compliance With Court-Ordered Measures That Properly Qualify Any "Made In USA" Statements. ..............................................................................................10

    B.  Plaintiffs' Fraud-Based Claims Fail For The Additional Reason That Plaintiffs Cannot Satisfy Rule 9(b)'s Requirements........................................................................14

    C.  Plaintiffs' Warranty-Based Claims Fail For The Additional Reason That Plaintiffs Fail to Plead A Warranty Or Actionable Breach. ..........................................................16

    D.  The Putative Nationwide Class Should Be Struck. ..................................................19

V.   CONCLUSION ................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 9, 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................................................. 11

*Brown v. Showtime Networks, Inc.*,
    394 F. Supp. 3d 418 (S.D.N.Y. 2019) ..................................................................... 13

*Collette v. Sig Sauer, Inc.*,
    No. 21-11392-FDS, 2021 WL 6052613 (D. Mass. Dec. 21, 2021) ......................... 18

*Dashnaw v. New Balance Athletics, Inc.*,
    No. 17-cv-159-L(JLB), 2018 WL 6168272 (S.D. Cal. Nov. 26, 2018) .................... 12

*Dashnaw v. New Balance Athletics, Inc.*,
    No. 17-cv-159-L(JLB), 2019 WL 313079 (S.D. Cal. Jan 24, 2019) ......................... 6

*Dashnaw v. New Balance Athletics, Inc.*,
    No. 17-cv-159-L(JLB), 2019 WL 3413444 (S.D. Cal. July 29, 2019) .................. 6, 11

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ................................................................................................ 12

*Floyd v. Am. Honda Motor Co.*,
    966 F.3d 1027 (9th Cir. 2020) ................................................................................. 19

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) .................................................................................................. 9

*Highway Sales, Inc. v. Blue Bird Corp.*,
    559 F.3d 782 (8th Cir. 2009) ................................................................................... 19

*In re Sears, Roebuck & Co.*,
    No. MDL-1703, 05 C 4742, 05 C 2623, 2006 WL 1443737(N.D. Ill. May 17,
    2006) ........................................................................................................................ 18

*Juarez v. Select Portfolio Servicing, Inc.*,
    708 F.3d 269 (1st Cir. 2013) ................................................................................... 15

*Kowalski v. Gagne*,
    914 F.2d 299 (1st Cir. 1990) ............................................................................4, 10

*Lister v. Bank of Am., N.A.*,
    790 F.3d 20 (1st Cir. 2015) ..............................................................................9, 13

*Manning v. Boston Med. Ctr. Corp.*,
    725 F.3d 34 (1st Cir. 2013) ....................................................................10, 18, 19

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012) .....................................................................................19

*MSP Recovery Claims, Series LLC and Series 17-04-631 v. Plymouth Rock*
    *Assurance Corp.*,
    404 F. Supp. 3d 470 (D. Mass. 2019) .............................................................10, 19

*Mulder v. Kohl's Dep't Stores, Inc.*,
    865 F.3d 17 (1st Cir. 2017) .......................................................................9, 14, 15

*Rodi v. S. New England Sch. of Law*,
    389 F.3d 5 (1st Cir. 2004) ..........................................................................2, 3, 7

*Siebring v. Hansen*,
    346 F.2d 474 (8th Cir. 1965) .............................................................................11

*Taupier v. Davol, Inc.*,
    490 F. Supp. 3d 430 (D. Mass. 2020) .................................................................7

*Thout v. Deutsche Bank Nat'l Trust Co.*,
    369 F. Supp. 3d 318, 323 (D. Mass. 2019) ......................................................16

*Wilson v. HSBC Mortg. Servs., Inc.*,
    744 F.3d 1 (1st Cir. 2014) ..................................................................................9

## Statutes

15 U.S.C. § 2301 .................................................................................................17, 18

15 U.S.C. § 2310 ........................................................................................................19

U.C.C. § 2-313 .......................................................................................................16, 17

## Other Authorities

Fed. R. of Civ. P. 9(b) .......................................................................................2, 9, 14-16

Fed. R. Civ. P. 23(b)(3) ............................................................................................19

Fed. Trade Comm'n, *Complying with the Made in USA Standard*,
   https://www.ftc.gov/tips-advice/business-center/guidance/
   complying-made-usa-standard ............................................................................................18

Fed. Trade Comm'n, *Enforcement Policy Statement on U.S. Origin Claims*,
   62 Fed. Reg. 63766 (Dec. 2, 1997) ..........................................................................8, 13, 14

## I.    <u>PRELIMINARY STATEMENT</u>

In an attempt to cure the defects in the initial complaint, Plaintiffs include allegations in their First Amended Complaint that directly undermine their own core contention.  The six named Plaintiffs all purchased, between January 2019 and November 2021, shoes sold by Defendant New Balance.  They allege that these shoes "prominently claim to be 'Made in USA,'" FAC ¶ 2, and that these claims are "unqualified" when in fact "at least 30% of the Sneakers … are imported."  FAC ¶¶ 20-28, 49.  Based on this foundational allegation, they assert claims sounding in breach of warranty, violation of consumer protection law, fraud, and false advertising.

But Plaintiffs simultaneously admit that their central claim is false:  They acknowledge that on hangtags affixed to the shoes themselves, on shoeboxes, and on the New Balance website, New Balance expressly states that its products have "domestic value of 70% or greater."  FAC ¶¶ 39-41.  A statement is not "unqualified" if it is accompanied in several places by an express qualification.  Plaintiffs do not allege that New Balance's express qualification is untrue.  Nor do they claim that this accurate qualification was somehow absent when they made their purchases— they each admit to having "reviewed the Sneakers' marketing, advertising and packaging," FAC ¶¶ 7-12, do not deny that this included New Balance's qualification, and yet still claim to have been defrauded by an "unqualified" Made in USA claim.  That is implausible.

Plaintiffs also largely ignore the reality that New Balance's express qualification has been blessed by a California federal court.  The plaintiffs in *Dashnaw v. New Balance Athletics, Inc.* advanced the same legal theories based on precisely the same conduct purportedly at issue here. Even before *Dashnaw*, New Balance included qualifications of its "Made in USA" statements to reflect the foreign manufacture of certain components.  And to resolve *Dashnaw*, New Balance agreed to injunctive relief, operative by January 2019, requiring it to ensure that its qualifications are prominent enough to be seen by all consumers.  Recognizing that this undermines their

allegations, Plaintiffs vaguely insinuate that New Balance "do[es] not comply" with the *Dashnaw* injunction, FAC ¶ 38, but point to not a single example of non-compliance.

Plaintiffs' complaint should be dismissed because its central allegation is untenable.  In addition, their fraud-based claims fail to plausibly allege either falsity or fraudulent intent— particularly in light of New Balance's good-faith compliance with the *Dashnaw* injunction—and fail to allege fraud with the particularity required under Federal Rule of Civil Procedure 9(b).[1] Plaintiffs' warranty-based claims fail to plead any breach of the statement that New Balance's products have "domestic value of 70% or greater," and their Magnuson-Moss Warranty Act claim does not even plead a "written warranty" as that term is defined.  And in all events, Plaintiffs' attempt to bring a sprawling class action of any purchasers of New Balance sneakers, whether at a retailer or online, without even addressing the obvious effect of New Balance's express qualifications or the legal implications of the *Dashnaw* injunction should not be countenanced.

New Balance has already litigated this class action once, agreeing to steps that ensure that all of its "Made in USA" representations are appropriately qualified in a manner to give accurate disclosure to all consumers nationwide.  If future plaintiffs could simply ignore such wide-ranging relief in pursuit of follow-on class actions like this one, it would discourage defendants from settling such litigations at all.  Consumers and defendants alike would be worse off.  And the courts would be clogged with discovery in speculative class actions that have no grounding in reality. The motion should be granted.

II.     **<u>BACKGROUND</u>**

All material aspects of the factual background recited below are drawn from the First Amended Complaint in this action; "materials fairly incorporated within it"; and matters of public

---

[1] All further references to Rules are to the Federal Rules of Civil Procedure.

record on the docket of *Dashnaw*, of which this Court may take judicial notice, *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004).

### A.     New Balance Makes Millions Of Pairs Of Shoes In American Facilities.

Established in 1906, New Balance is a Boston-based seller of athletic shoes and apparel. FAC ¶ 13; *see generally* New Balance, *Responsible Leadership - Who We Are – Our Heritage*, https://www.newbalance.com/responsible-leadership/who-we-are.html?id=oh (last visited Mar. 18, 2022).  For more than 75 years, New Balance has maintained manufacturing, production, and distribution facilities in New England.  Those facilities employ approximately 1,000 American workers and produce millions of shoes each year.  *Id.*; New Balance, *Responsible Leadership – Owned Manufacturing – Made. American.*, https://www.newbalance.com/responsible-leadership/owned-manufacturing.html#ov (last visited Mar. 18, 2022).

New Balance takes great pride in its continued commitment to American workers—especially at a time when virtually all of its competitors have long-since moved the entirety of their production operations overseas.  And although New Balance must maintain some of its own operations abroad in order to compete, it continues to feature footwear that is manufactured in its American facilities.  *E.g.*, FAC ¶¶ 19-27.  New Balance touts the domestic origins of these shoes on the shoes themselves, on product packaging, in advertising, and on its website.  FAC ¶¶ 20-27. Although all of these shoes are manufactured in New Balance's U.S.-based facilities, some components of some of the shoes—for example, the soles—are made abroad, imported, and later incorporated into the shoe.  FAC ¶ 35.

### B.     To Resolve A Prior Class Action, New Balance Agreed To Court-Ordered Injunctive Relief Requiring Detailed Specification Of Product Origin.

In late 2016, three named plaintiffs brought a putative class action against New Balance that was litigated in federal district court in the Southern District of California, *Dashnaw v. New*

*Balance Athletics, Inc.*, No. 3:17-cv-00159-L-JLB (S.D. Cal.).[2]  The *Dashnaw* complaint alleged the same conduct that is alleged in this lawsuit.  Specifically, it alleged that "New Balance … advertises that its shoes are made in the USA … even when up to 30 percent of the value of the shoes is attributable to foreign-made components and/or labor."  Puzella Decl., Ex. 1 at ¶ 2 (First Amended Complaint ¶ 2, *Dashnaw*, ECF No. 16 (Feb. 20, 2017)) ("*Dashnaw* Compl.").  It highlighted "Made in U.S.A." representations on the tongues of New Balance shoes, on shoe boxes, and on New Balance's website.  *Id.* at ¶¶ 25-29.  And it alleged that "[t]here are no qualifications or disclosures regarding the Made in the USA claim[s]."  *Id.* at ¶¶ 26-29.

The *Dashnaw* plaintiffs alleged various California state-law causes of action, sounding in California's False Advertising Law, Consumer Legal Remedies Act, Unfair Competition Law, Cal. Bus. & Prof. Code § 17533.7 concerning "Made in the U.S.A." statements, breach of express warranty, negligent misrepresentation, and unjust enrichment and restitution.  *Id.* at 14-23.  And plaintiffs sought to certify a class of "All persons located within the State of California who purchased any New Balance shoe model labeled or advertised as made in the United States at any time beginning four (4) years prior to the filing of this action … and ending at the time this action settles or proceeds to final judgment."  *Id.* ¶ 43.

After over a year of discovery, and full briefing on the *Dashnaw* plaintiffs' motion to certify their putative class and on New Balance's motion for judgment on the pleadings, the parties reached a settlement.  New Balance conceded no liability and maintained throughout the case, without dispute, that it was already qualifying its "Made in USA" claims.  Puzella Decl. Ex. 2 (New Balance's Opposition to Class Certification, *Dashnaw*, ECF No. 73 at 4).  But to ensure

---

[2] We cite items from the docket in this action *Dashnaw*, ECF No. __.  The contents of these records are judicially noticeable.  *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990).

utmost accuracy and avoid further litigation, New Balance agreed to both $750,000 in monetary payments and injunctive relief that would ensure that all qualifications would be visible to all consumers.  *See* Puzella Decl., Ex. 3 (Amended Settlement Agreement, *Dashnaw*, ECF No. 117-3 (June 21, 2019)) ("*Dashnaw* Settlement").

Specifically, the settlement called for forward-looking injunctive relief requiring New Balance, "for all 'Made in USA' Shoes … which contain less than 95% U.S. content," to:

- Remove the phrase "Made in the USA" from the front of hangtags[3] on the footwear;

- Include on the hangtag, "in clear readable font," the sentence "New Balance 'made' is a premium collection that contains domestic value of 70% or greater … unless and until a change in either federal or California law obviates the need for such clarification."

- Remove the phrase "Made in the USA" from the top of shoe boxes.

- Qualify any representations on the side of shoe boxes with the same qualification above concerning "domestic value of 70% or greater unless and until a change in either federal or California law obviates the need for such clarification."

- Qualify any representations on New Balance's website with the same qualification concerning "domestic value of 70% or greater," including accompanying "all banners saying 'Made in USA' or displaying a "Made in USA' shoe where the 'Made in USA' label is showing," "the 'Made in USA' Shoe landing page," and "all individual product display pages containing a 'Made in USA' Shoe."

Puzella Decl., Ex. 3, *Dashnaw* Settlement at 12-14.

After twice denying the plaintiffs' motion to approve the settlement in order to ensure that

---

[3] A "hangtag" is "a tag attached to an article of merchandise giving information about its material and proper care."  Merriam-Webster, "hangtag," http://merriam-webster.com/dictionary/hangtag (last visited, Mar. 18, 2022).

it adequately served the public interest, the district court certified a settlement class and approved the settlement on January 24, 2019. *See Dashnaw v. New Balance Athletics, Inc.*, No. 17-cv-159-L(JLB), 2019 WL 313079, at *1-2 & n.1 (S.D. Cal. Jan 24, 2019); *see also* Puzella Decl. Ex. 4 (Order Granting Second Renewed Motion for Preliminary Approval of Settlement). In doing so, the district court found that the relief agreed to by New Balance was "fair, reasonable, and adequate" under Rule 23. *See Dashnaw v. New Balance Athletics, Inc.*, No. 17-cv-159-L(JLB), 2019 WL 3413444, at *14 (S.D. Cal. July 29, 2019); *see also* Puzella Decl. Ex. 5 (Order Granting Motion for Final Class Action Settlement Approval). No class member objected to the adequacy of this injunctive relief before the district court approved it. *Id.* at *5. And the *Dashnaw* docket reflects that no class member has ever returned to the district court to claim that New Balance has failed to comply with the injunction.

## C.     Plaintiffs Bring This Follow-On Lawsuit But Fail To Address New Balance's Prominent Qualifications Of "Made in USA" Statements.

Plaintiffs brought this materially identical case on December 20, 2021. It is based on the same factual allegations advanced in *Dashnaw*. Like the *Dashnaw* plaintiffs, Plaintiffs here highlight statements on the shoes themselves, the shoe boxes, and the New Balance website. FAC ¶¶ 20-27. And Plaintiffs here advance the same legal theories at issue in the California state causes of action in *Dashnaw*, bringing claims under various sources of state and federal law for breach of warranty, unjust enrichment, fraud, false advertising, unfair competition, and violation of consumer protection statutes.[4] FAC ¶¶ 72-242. In addition, Plaintiffs include class allegations

---

[4] The counts are: (I) Violation of the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A *et seq.*; (II) Breach of Express Warranty; (III) Violation of the Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et. seq.*; (IV) Unjust Enrichment; (V) Fraud; (VI) Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; (VII) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et. seq.*; (VIII) Violation of California's False Advertising Law, Cal Bus. & Prof. Code §§ 17500, *et. seq.*;

that assert a nationwide class of "all persons in the United States who purchased the sneakers," as well as state subclasses of purchasers in California, Michigan, Pennsylvania, New Jersey, Florida, and New York.  FAC ¶¶ 58-64.

In their initial complaint, Plaintiffs scarcely mentioned New Balance's express qualifications concerning the domestic content of its sneakers or the fact that these qualifications were deemed adequate by the *Dashnaw* settlement.  *See* Def.'s Mem. Law Supp. Mot. Dismiss Pls.' Compl. 7-8.  After New Balance's motion to dismiss, Plaintiffs admit more detail.  For example, while they point to the words "Made in USA" on the front and back of the tongues of sneakers themselves, Plaintiffs' concede that hangtags attached directly alongside the tongues of the sneakers specify "domestic value of 70% or greater," FAC ¶ 39—just as *Dashnaw* contemplates.  They make similar concessions with respect to the *Dashnaw*-ordered qualifications on shoeboxes.  FAC ¶ 40.

Plaintiffs are less forthcoming regarding New Balance's website, even though the claims of several named Plaintiffs are based on online shoe purchases.  Plaintiffs rest these claims entirely on a screenshot of the "Footwear Made in the USA" page of that website, thereby incorporating the relevant aspects of the website into the complaint, *Rodi*, 389 F.3d at 12.  *See* FAC ¶ 25; New Balance, *Footwear Made in the USA,* http://newbalance.com/made-in-the-usa/?ICID=LP-LP_MADE_10802_MW (last visited Mar. 18, 2022).  But Plaintiffs' artful screenshot omits the following qualifying statement in the first paragraph of copy on that very page, in the same-sized

---

(IX) Violation of the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.903, *et seq.*; (X) Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq.*; (XI) Violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§56:8-1, *et seq.*; (XII) Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Sta. §§501.201, *et seq.*; (XIII) Violation of the New York General Business Law § 349; and (XIV) Violation of the New York General Business Law § 350.

typeface as the other text on the page: "Meet the New Balance MADE Collection, a premium selection of New Balance shoes that contain a domestic value of 70% or greater." *Id.*; *see also* Puzella Decl. Ex. 7 (reprinting web page).  Plaintiffs also neglect to mention that the only way to access the page they screenshot is through a "Shop now" link directly beneath the same qualification.



New Balance, *Custom Shoes & Sneakers Made in the USA*, http://newbalance.com/made-in-us-and-uk (last visited March 18, 2022); *see also* Puzella Decl. Ex. 9 (reprinting web page).  Similarly, Plaintiffs omit that the only way to purchase shoes is through the relevant product page linked from the page they screenshot, all of which state either (or both) of the following: "Manufactured in the US for over 75 years and representing a limited portion of our US sales, New Balance Made is a premium collection that contains domestic value of 70% or greater," or "New Balance Made contains a domestic value of 70% or more. Made makes up a limited portion of New Balance's US sales."  Puzella Decl. Ex. 8 (reprinting representative product pages).

Made in USA claims with qualifications like these are what FTC regulations define as "Qualified U.S. Origin Claims."  *See* Fed. Trade Comm'n, *Enforcement Policy Statement on U.S. Origin Claims*, 62 Fed. Reg. 63766 (Dec. 2, 1997) ("FTC Enforcement Statement").  Plaintiffs nevertheless contend that New Balance engages in "knowing[] and intentional[]" violation of FTC

regulations by making "unqualified" Made in USA claims.  FAC ¶¶ 30-32.  They seek damages

of up to $500 per pair of shoes, unspecified injunctive relief, and attorneys' fees.  FAC 53-54.

### III.   <u>LEGAL STANDARD</u>

*Motion to Dismiss.*  "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Dismissal for failure to state a claim is appropriate if the complaint does not set forth factual

allegations, either direct or inferential, respecting each material element necessary to sustain

recovery under some actionable legal theory."  *Lister v. Bank of Am., N.A.*, 790 F.3d 20, 23 (1st

Cir. 2015) (citing *Lemelson v. U.S. Bank Nat'l Ass'n*, 721 F.3d 18, 21 (1st Cir. 2013)).  Although

the complaint is construed "in the light most favorable to the [plaintiffs]," the court need not "take

every single allegation at face value."  *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir.

2014).  The court can "consider documents incorporated by reference into the complaint and

matters of public record," and may "disregard facts which have been conclusively contradicted by

[plaintiffs'] concessions or otherwise."  *Lister*, 790 F.3d at 23 (internal quotation marks omitted)

(alteration in original).   Moreover, for any "general claims of fraud and … associated

claims … where the core allegations effectively charge fraud," a plaintiff must additionally satisfy

the heightened particularity requirements of Rule 9(b).  *Mulder v. Kohl's Dep't Stores, Inc.*, 865

F.3d 17, 21-22 (1st Cir. 2017) (internal citations and quotations omitted).

*Motion to Strike.*  Under Rule 12(f), a "court may strike from a pleading … any redundant,

immaterial, impertinent, or scandalous matter."  In a putative class action, "[s]ometimes the issues

are plain enough from the pleadings" to determine whether the class treatment proposed by the

named plaintiffs is appropriate.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).  "If it

is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide

basis, district courts use their authority under [Rule] 12(f) to delete the complaint's class allegations." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 60 (1st Cir. 2013) (internal citations omitted); *see MSP Recovery Claims, Series LLC and Series 17-04-631 v. Plymouth Rock Assurance Corp.*, 404 F. Supp. 3d 470, 484-85 (D. Mass. 2019) (identifying circumstances in which striking class allegations is appropriate).

## IV.   ARGUMENT

### A.   Plaintiffs Fail To State A Plausible Claim Because They Cannot Contest New Balance's Compliance With Court-Ordered Measures That Properly Qualify Any "Made In USA" Statements.

The complaint fails in its entirety because the foundational contention of every claim—that New Balance knowingly and intentionally makes "unqualified" claims that products are "Made in USA"—is contradicted by facts contained in the complaint, materials incorporated into the complaint, and materials of which the Court may take judicial notice.  It is beyond dispute that New Balance is subject to ongoing, nationwide injunctive relief requiring prominent qualification of its Made in USA statements to notify consumers of the nature of its domestic manufacturing. Plaintiffs fail to plead in a non-conclusory fashion New Balance's non-compliance with the injunction, nor do they dispute the presence of express, accurate qualifications of Made in USA claims.  This leaves Plaintiffs with no plausibly articulated claim.

Plaintiffs' allegations (or the website the complaint incorporates by reference) demonstrate that an express qualification appears alongside every "Made in USA" statement any consumer could conceivably see at the point of purchase—whether on the shoes themselves, the shoebox, or the website.  And Plaintiffs do not dispute that New Balance is subject to the *Dashnaw* injunction, the fact and legal effect of which are properly before the Court in this motion to dismiss.  *Kowalski*, 914 F.2d at 305 (noting that it is "well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand").  As

explained above (at 6-7), the *Dashnaw* plaintiffs brought virtually the same lawsuit Plaintiffs bring here, purporting to challenge the use of the phrase "Made in USA," allegedly without qualification. After discovery and "aggressive[] litigat[ion]"—which in fact demonstrated that New Balance was already qualifying any "Made in USA" statements—New Balance agreed to undertake still further steps to ensure that all consumers would be accurately notified of the nature of New Balance's domestic manufacturing.  *Dashnaw*, 2019 WL 3413444 at *12.  This included removal of "Made in USA" statements in some instances and further qualifications in others.  *Id.* at *6, 12; *see also* Puzella Decl. Ex. 5 (Order Granting Motion for Final Class Action Settlement Approval)

This district court's approval of that relief and entry of an injunction carries several necessary legal implications.  To begin with, the entry of a consent decree is a judicial act that "possesses the same force and character as a judgment rendered following a contested trial." *Siebring v. Hansen*, 346 F.2d 474, 477 (8th Cir. 1965).  Because *Dashnaw* was a class action, moreover, the district court could approve the injunction only after a fairness hearing and a determination that the settlement was "fair, reasonable and adequate"—an inquiry that the district court conducted, per Ninth Circuit law, with an "even higher level of scrutiny" because settlement was reached before the class was certified.  *Dashnaw*, 2019 WL 3413444 at *6 (applying *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011)); Puzella Decl. Ex. 5 (Order Granting Motion for Final Class Action Settlement Approval).

In the context of a case alleging false advertising, moreover, the district court's finding that New Balance's undertakings were adequate protected not only class members, but the public. False advertising by definition—and, accordingly, as pled in *Dashnaw*—implicates communications made by the defendant to the public at large.  So too, of course, the *Dashnaw* injunction prospectively commands the alteration of the content of those communications "for all

'Made in USA' Shoes."  Puzella Decl., Ex. 3, *Dashnaw* Settlement at 12.  Throughout the settlement approval process, the district court in *Dashnaw* was keenly focused on the public interest, initially denying the parties' proposed *cy pres* award absent a demonstration that the "funds [would be] distributed for the purpose of protecting consumers from, or redressing injuries caused by, false advertising."  *Dashnaw v. New Balance Athletics, Inc.*, No. 17-cv-159-L(JLB), 2018 WL 6168272, at *1 (S.D. Cal. Nov. 26, 2018) (internal quotation marks omitted); *see also* Puzella Decl. Ex. 6 (Order Denying Plaintiffs' Renewed Motion for Preliminary Approval of Class Certification).  And of course, the appropriateness of any injunctive relief turns in part on the consideration that "the public interest would not be disserved" by the injunction.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

At a minimum, then, the *Dashnaw* injunction represents a binding, duly issued judicial order requiring future undertakings that presumptively address the legal wrongs alleged in that case.  And because of the injunction's obvious factual and legal significance to the alleged course of conduct in this case, the plausibility of Plaintiffs' factual allegations depends heavily on how they address New Balance's compliance with its undertakings.

Yet Plaintiffs scarcely mention the topic.  They allege that New Balance "continues to make false and misleading 'Made in the USA' claims on its sneakers, including in ways that do not comply with the 'relief' agreed to in the *Dashnaw* settlement."  FAC ¶ 38.  What "ways"? Plaintiffs do not even attempt to say—a fatal omission since New Balance's representations are entirely public and thus readily ascertainable.  Plaintiffs do not allege a *single* "Made in USA" statement that was not immediately accompanied by the *Dashnaw*-required qualifications, nor a single sale in which the qualification was not present.  The only plausible inference one could draw from this omission is that New Balance is indeed fully in compliance.  This in turn belies, as a

matter of law, Plaintiffs' allegation—really a bare assertion of a legal conclusion—that New Balance violates FTC regulations with respect to *unqualified* claims.  New Balance makes only what the FTC treats as "Qualified U.S. Origin Claims"—like the FTC's own paradigmatic example, "60% U.S. content."  FTC Enforcement Statement, 62 Fed. Reg. 67770.  And Plaintiffs do not even attempt to allege that New Balance runs afoul of regulations pertaining to such qualified statements.[5]

Unable to support their claims with actual factual allegations, Plaintiffs resort to language arts and graphic design.  They describe *Dashnaw*'s relief as "meager," a meaningless label in light of the plain legal import of the injunction described above.  FAC ¶ 38 n.9.  They say New Balance's qualifications appear only in "small font" on the "rear side of hangtags."  FAC ¶ 39.  The qualifications appear exactly where the *Dashnaw* settlement requires them.  It is the "rear side" only because Plaintiffs' have flipped the hangtag that way, and the font is "small" only because Plaintiffs have included a deliberately small image.  Beyond Plaintiffs' artistry, it is readily apparent that the qualification is not fine print in any sense—it is one of two sentences on the hangtag and is in the same sized typeface as the other sentence.  And as for Plaintiffs' allegation that the qualifications are "buried" on New Balance's website, FAC ¶ 41, the website itself, which is incorporated by reference, flatly belies the claim.  It includes repeated qualification in the main section of every relevant page a consumer would view.  *Supra* at 8.  This Court need not and should not defer to Plaintiffs' conclusory characterizations over the reality.  *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 436 (S.D.N.Y. 2019) (where film was incorporated in complaint, court "consider[ed] the film itself—not the parties' characterizations of what it shows").  And that reality

---

[5] At a minimum, this requires dismissal of the claims in Plaintiffs' complaint explicitly predicated on violations of FTC regulations.  *See* FAC ¶¶ 81, 210.

"conclusively contradict[s]" Plaintiffs' allegations.  *Lister*, 790 F.3d at 23.

Plaintiffs' final tactic is to suggest that New Balance's qualification "domestic value of 70% or greater" is "not curative" because New Balance "does not define the term 'domestic value.'"  FAC ¶ 43.  They consume several paragraphs attempting to sow "ambiguity" and "confusion."  FAC ¶¶ 41-43.  But even if some consumers might perceive some ambiguity in the precise meaning of "domestic value"—and, notably, Plaintiffs do not allege that any actual consumer ever has—that would hardly save Plaintiffs' complaint.  All that matters here is that the qualification behaves as a qualification, communicating to consumers that the sneakers are not exclusively of domestic origin.  Certainly the FTC's regulations require no more exactitude, since they explicitly permit far more indefinite qualified claims like "Made in USA of U.S. and imported parts."  FTC Enforcement Statement, 62 Fed. Reg. 63770.   No reasonable consumer could read New Balance's qualification and still believe that the sneakers are 100% made in the United States.  And Plaintiffs do not plead otherwise, implicitly conceding away the point as well as any plausible suggestion that New Balance makes unqualified claims.

In short, each of Plaintiffs' claims fails because each is predicated on the implausible (and contradicted) tale that New Balance—despite compliance with binding, nationwide injunctive relief—makes unqualified Made in USA claims.  Plaintiffs cannot survive a motion to dismiss by pretending that the *Dashnaw* injunction and its real-world effects do not exist.

### B.    Plaintiffs' Fraud-Based Claims Fail For The Additional Reason That Plaintiffs Cannot Satisfy Rule 9(b)'s Requirements.

Most of Plaintiffs' claims fail for the additional, independent reason that Plaintiffs have failed to satisfy Rule 9(b)'s particularity requirement.  It is well-settled in the First Circuit that Rule 9(b) applies not only to "general claims of fraud" but also to "associated claims … where the core allegations effectively charge fraud."  *Mulder*, 865 F.3d at 21-22.  In *Mulder*, for example,

the First Circuit applied Rule 9(b) to claims under statutory consumer protection law, fraud, breach of contract, and unjust enrichment theories because all were based on the plaintiffs' allegation that "she was 'deceived by … advertising.'"   *Id.* at 21.   Similarly, Plaintiffs' claims of unjust enrichment, fraud, and violation of various consumer protection or unfair competition laws are all predicated on "Made in USA" statements made by New Balance with allegedly deceptive intent. FAC ¶¶ 72-91, 109-242 (counts I, IV-XIV).  (The exceptions are Plaintiffs' warranty-based claims, counts II and III, which fail for additional independent reasons of their own.   *Infra* 16-18.) Plaintiffs fail to plead a viable claim under Rule 9(b) for several reasons.

*First*, Plaintiffs fail to plead with particularity the content of New Balance's representations by which they were, allegedly, deceived.  A fraud-based claim must "include specifics about the time, place, and content of the alleged false representations."  *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 280 (1st Cir. 2013) (internal citations and quotations omitted).  But Plaintiffs are demonstrably hiding the ball about the content of New Balance's representations at particular times and in particular contexts.  Which advertising claims did Plaintiffs observe?  Did the named plaintiffs in this case observe the qualifications ordered by the *Dashnaw* injunction and not understand them?  Are they alleging that the qualifications were not there at all?  If so, on what dates, and in what locations, are Plaintiffs claiming the qualifications ordered in *Dashnaw* were not included?  Without the particulars of what representations Plaintiffs allege they relied upon, New Balance cannot possibly have fair notice of the basis of the claims.  And this problem is only compounded by Plaintiffs' putative class action, which threatens to devolve into thousands of minitrials about who relied on what and when.

Instead of the particularity required, Plaintiffs generally plead that "Defendant provided Plaintiffs and members of the Classes with false or misleading material information about the

Sneakers, ***including but not limited*** to the fact that the Sneakers were 'Made in the USA.'"  FAC ¶ 117 (emphasis added).  "Including but not limited to" does not come close to satisfying Rule 9(b)'s particularity requirement.  In *Thout v. Deutsche Bank Nat'l Trust Co.*, plaintiff "specifie[d] one alleged instance *'[a]mong others'* of a 'concerted pattern of actions designed to fraudulently confuse and obfuscate [its] actions and Plaintiff's rights and responsibilities."  369 F. Supp. 3d 318, 323 (D. Mass. 2019) (emphasis in original) (internal citation omitted) (alterations in original). The court found that the plaintiff "failed to plead fraud with particularity."  *Id*.

*Second*, Plaintiffs fail to allege that New Balance's *qualified* representations are false. They call them "confusing," but that is not enough for fraud.  And because Plaintiffs neither adequately contest that New Balance is in full compliance with the *Dashnaw* injunction nor specifically describe how New Balance's qualified representations are inaccurate, they fail to allege that these qualifications are actually false.

*Third*, for similar reasons, Plaintiffs cannot plausibly allege intent.  It is implausible that New Balance—having qualified its statements in accordance with the *Dashnaw* injunction and remaining fully in compliance with those undertakings—simultaneously harbors the intent to deceive customers and induce their reliance on its qualified statements.  And while Plaintiffs include conclusory allegations that New Balance "intentionally ma[de] false and misleading statements," they offer nothing to make that contention *plausible*.  Although "intent … may be alleged generally," a plaintiff may not "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."  *Iqbal*, 556 U.S. at 687.  The fraud-based claims should therefore be dismissed.

## C.   **Plaintiffs' Warranty-Based Claims Fail For The Additional Reason That Plaintiffs Fail to Plead A Warranty Or Actionable Breach.**

Plaintiffs' warranty claims (counts II and III) fail for additional independent reasons.

*U.C.C. § 2-313.*  Plaintiffs appear to allege claims under one or more state-law versions of U.C.C. § 2-313, which applies to express warranties.  Section 2-313 applies to "any affirmation of fact or promise … which relates to the goods and becomes part of the basis of the bargain."  A breach of express warranty claim is therefore "an action in contract."  *Taupier v. Davol, Inc.*, 490 F. Supp. 3d 430, 437 (D. Mass. 2020) (internal quotation marks omitted).  To sustain a claim, "the plaintiff must demonstrate that the defendant promised a specific result and that defendant failed to deliver on his promise."  *Id.* (internal quotation marks omitted).

Plaintiffs have not plausibly alleged a § 2-313 claim.  While they contend that New Balance "expressly warranted that the Sneakers were 'Made in the USA,' as that term is defined by the FTC," FAC ¶ 94, they concede that any such contentions were accompanied by a "disclaimer" that the shoes "contain[ed] a domestic value of 70% or greater," FAC ¶ 39.  If the former statement qualifies as an express promise forming the basis of the bargain, so necessarily does the latter qualification of that statement.[6]  A plaintiff cannot pick and choose the applicable terms of an express warranty any more than it can do so for an ordinary breach-of-contract claim.  And because Plaintiffs do not and cannot allege that New Balance has breached its promise of "domestic value of 70% or greater," they fail to state a claim.

*Magnuson-Moss Warranty Act.*  Plaintiffs' Magnuson-Moss Warranty Act (MMWA) claim fails for the same reason:  Plaintiffs concede that New Balance qualifies any alleged warranty by specifying "domestic value of 70% or greater" and do not plead breach of that statement.  The claim also fails because nothing Plaintiffs plead—whether an unqualified *or* qualified "Made in USA" statement—meets the MMWA's definition of "written warranty."

---

[6] New Balance assumes for purposes of this motion only that Plaintiffs relied upon New Balance's statements concerning domestic origin as a part of the basis of the bargain and as a warrant of a material aspect of its footwear and reserves all rights to challenge those elements.

Plaintiffs' MMWA claim invokes 15 U.S.C. § 2301(6), which (as relevant here) defines a "written warranty" as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship *and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time*.

15 U.S.C. § 2301(6)(a) (emphasis added).  Plaintiffs do not allege that New Balance "affirm[ed] or promis[ed]" that its sneakers are "defect free" nor that they "will meet a specified level of performance over a specified period of time."  As the court held in *In re Sears, Roebuck & Co.*, the statement "Made in USA," is like "other product description[s] that [do] not inform the customer that the [product] is defect-free or make any representation about performance."  No. MDL-1703, 05 C 4742, 05 C 2623, 2006 WL 1443737, at *4 (N.D. Ill. May 17, 2006).

This result accords with the great weight of authority on the scope of the MMWA.  Courts have recognized that the MMWA's definition of written warranty is "more restrictive than the definition of express warranty provided by the U.C.C."  *Collette v. Sig Sauer, Inc.*, No. 21-11392-FDS, 2021 WL 6052613, at *7 (D. Mass. Dec. 21, 2021).  And they "have been wary about expanding the definition of 'written warranty' and have narrowly construed the term." *Id.* at *6 (internal citation omitted).  Courts routinely dismiss MMWA claims that are based on mere product description.  *See id.* (collecting cases).  And for its part, the FTC—the agency responsible for policing Made in USA claims *and* for implementing rules under the MMWA—has never suggested that Made in USA claims qualify as warranties subject to the MMWA.  *See* Fed. Trade Comm'n, *Complying with the Made in USA Standard*, https://www.ftc.gov/tips-advice/business-center/guidance/complying-made-usa-standard (last visited, Mar. 18, 2022).  The MMWA claim should therefore be dismissed.

D.    **The Putative Nationwide Class Should Be Struck.**

Finally, this Court should strike Plaintiffs' nationwide class allegations.  Courts strike class allegations where it is "obvious from the pleadings" that they cannot form the basis for a class action.  *Manning*, 725 F.3d at 60.  For example in *MSP Recovery Claims, Series LLC and Series 17-04-631 v. Plymouth Rock Assurance Corp.*, the district court struck class definitions that necessarily included time-barred claims and that could not comply with Rule 23.  404 F. Supp. 3d at 484-85.

The nationwide class should be struck.  The only basis for that class is an MMWA claim for breach of express warranty, so if that claim fails, Plaintiffs cannot sustain a nationwide class.  It fails for the substantive reasons discussed above (at 17-18).  And even if Plaintiffs had adequately pled a "written warranty," they fail to meet the procedural requirements for an MMWA class action.  The MMWA provides that a class action is not cognizable if "the number of named plaintiffs is less than one hundred."   15 U.S.C. § 2310(d)(3)(C).  Plaintiffs do not name 100 plaintiffs, so they fail to comply.  *See Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020) (holding that the Class Action Fairness Act does not circumvent MMWA's jurisdictional requirement of 100 named plaintiffs).

This leaves Plaintiffs with no claim common to a nationwide class.  Instead, they have only state law claims specific to six state subclasses.  Plaintiffs thus fail to plead causes of action for putative class members from the other 44 states, undermining any prospect of a nationwide class. *See* Fed. R. Civ. P. 23(b)(3); *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589-94 (9th Cir. 2012) (rejecting nationwide class that lacked a uniform common claim).

V.    **CONCLUSION**

For the foregoing reasons, New Balance respectfully requests that the Court grant the motion to dismiss and the motion to strike class allegations.

Dated: March 21, 2022                    Respectfully submitted


                                         */s/ Mark S. Puzella*
                                         Mark S. Puzella (BBO No. 644850)
                                         mpuzella@orrick.com
                                         R. David Hosp (BBO No. 634091)
                                         dhosp@orrick.com
                                         Sheryl Garko (BBO No. 657735)
                                         sgarko@orrick.com

                                         ORRICK, HERRINGTON & SUTCLIFFE LLP
                                         222 Berkeley Street
                                         Suite 2000
                                         Boston, MA  02116-3740
                                         Telephone: 617.880.1800
                                         Facsimile:  617.880.1801

                                         ***Attorneys for Defendant,***
                                         ***New Balance Athletics, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2022 a copy of the foregoing is being filed electronically

through the ECF system. Parties may access this filing through the Court's system.

*/s/ Mark S. Puzella*

Mark S. Puzella