## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ──────────────────────────── )<br>MATTHEW CRISTOSTOMO,　　　　　 )<br>ANTHONY BOLLINI, SPENCER　　　 )<br>VERRILLA, DERRICK　　　　　　　 )<br>EVANS, CLIFTON BRADLEY,　　　　 )<br>and ROBERT KAMINSKY,　　　　　 )<br>individually and on behalf of all others )<br>similarly situated,　　　　　　　　 )<br>　　　　　　　　　　　　　　　　 )<br>　　　　　Plaintiffs,　　　　　　　 )<br>　　　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　 )<br>v.　　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　 )<br>NEW BALANCE ATHLETICS, INC.,　 )<br>　　　　　　　　　　　　　　　　 )<br>　　　　　Defendant.　　　　　　 )<br>──────────────────────────── ) | Civil Action No. 1:21-cv-12095-AK |

## MEMORANDUM AND ORDER

**A. KELLEY, D.J.**

Plaintiffs Matthew Cristostomo, Anthony Bollini, Spencer Verrilla, Derrick Evans, Clifton Bradley, and Robert Kaminsky bring forth this action against Defendant, New Balance Athletics, Inc. (hereinafter "New Balance"). The plaintiffs purchased shoes from a premium New Balance "Made in the USA" collection. New Balance admits the shoes in this collection are made of up to 30% foreign content but claims they adequately disclose this detail to consumers. The plaintiffs dispute this characterization and bring forth claims based on violations of consumer protection law, breach of warranty, fraud, and false advertising.

New Balance has filed a motion to dismiss the plaintiffs' complaint and to strike certain class allegations. [Dkt. 19]. For the following reasons, New Balance's motion is **DENIED**.

## I.     BACKGROUND

The following facts are drawn from the complaint and taken as true for the purposes of a motion to dismiss for failure to state a claim.  García-Catalán v. United States, 734 F.3d 100, 102 (1st Cir. 2013); see also Fed. R. Civ. P. 12(b)(6).

New Balance sells a line of shoes that prominently feature claims that the shoes are "Made in the USA" despite the fact that the shoes' foreign composition mean they do not meet the "all or virtually all" standard used by the Federal Trade Commission ("FTC") to merit such a label.  [Dkt. 16 "Am. Compl." at ¶ 2].  Products described as made in the USA imply to consumers a higher quality product, evoke a sense of patriotism, and provide support for domestic manufacturing jobs.  [Id. at ¶ 50].  For these reasons, consumers are willing to pay more for products when they bear the label "Made in the USA."  [Id. at ¶¶ 51–54].

New Balance has maintained manufacturing, production, and distribution facilities in New England for the past 75 years.  [Dkt. 20 at 3].  New Balance produces a premium "made" collection of shoes that emphasizes that they are "Made in the USA."  [Am. Compl. at ¶ 19]. Several of these shoes feature American flags, the unqualified phrase "Made in the USA" on the outside tongue of the shoes, and/or the word "USA".  [Id. at ¶¶ 20–25].  This is true of the "Made in USA" 990v5, 990v4, 990v3, 990v2, and the 993.  [Id.]  The 992 and 1540v3 do not have such representations on the physical shoe but appear as part of the "Footwear Made in the USA" collection on the New Balance website.  [Id. at ¶ 25]. The shoes in the collection also feature the prefix "Made in USA" before their respective names when they appear on the New Balance website.  [Id.]  The inside label on the tongues of each shoe bear "Made in USA."  [Id. at ¶ 26].

The shoes' packaging includes materials that emphasizes their US connection.  The top of the box features a silhouette of a USA flag with the word "made" written on top of it.  [Id. at ¶ 27].  The phrase "made in the U.S. for over 75 years" is written on the side of the top.  [Id.]  The underside of the box also features another small "made" logo next to a flag with a caption that places the "made" collection in the context of "over 75 years of authentic American craftsmanship."  [Id.]

The shoes are not able to meet the FTC's guidelines for "Made in the USA" labeling because they are not "all or virtually all" made in the USA.  [Id. at ¶ 29].  Imported parts and foreign labor make up at least 30% of each shoe.  [Id. at ¶¶ 33–35]. In particular, New Balance admits that it imports the soles.  [Id. at ¶ 35].  The sole or "outsole" is key to the shoes' functioning, especially for athletic shoes, and is a part of the shoe where the durability and quality matter a great deal.  [Id.]

Alongside its "Made in USA" language, New Balance does include some disclaimers. While the front of the hangtags on its shoes features the "MADE." logo with the US flag, the rear side of the hangtags says, "New Balance 'made' is a premium collection that contains a domestic value of 70% or greater."  [Id. at ¶ 39].  On the side of each shoebox, below another larger "made" logo, the same phrase appears.  [Id. at ¶ 40].  When navigating to the "made" collection on the New Balance website, a similar disclaimer about a domestic value of 70% or more appears below the link to the collection.  [Dkt. 20 at 8].  This disclaimer reappears on other portions of the New Balance website as well.  [Am. Compl. at ¶ 41].  The term of domestic value employed by New Balance possesses no relevant legal definition.  [Id. at ¶¶ 43–46].

Plaintiffs allege that no reasonable person would expect the language that appears on the side of the shoebox, the rear of the hangtag, and on the website to contradict the unqualified

representation that the shoes were "Made in the USA." [Id. at ¶ 42]. They further allege that a reasonable consumer would not expect a shoe labeled "Made in USA" to have significant parts made outside of the Unites States. [Id.]

Plaintiff Matthew Cristosmoto purchased the model 992 in March 2021, the 990 in June 2021, and the 993 in November 2021 at a New Balance outlet near his home in Chula Vista, California. [Id. at ¶ 7]. Plaintiff Anthony Bollini purchased the 990 at a New Balance store near his home in Farmington, Michigan in January 2019. [Id. at ¶ 8]. Plaintiff Spencer Verilla purchased the 990v3 and 992 on Amazon.com in September 2021. [Id. at ¶ 9]. Plaintiff Derrick Evans purchased a 990v5 from a Footlocker new his home in Bloomfield, New Jersey in November 2020. [Id. at ¶ 10]. Plaintiff Clifton Bradley, whose home is in Seminole, Florida, purchased the 990v5 from newbalance.com in August 2020. [Id. at ¶ 11]. Plaintiff Robert Kaminsky, whose home is in Fresh Meadows, New York, purchased the M990 BK5 and the M990 Gl5 from Amazon.com. [Id. at ¶ 12]. Each plaintiff alleges that the shoes were marketed, advertised, and packaged as being "Made in the USA." [Id. at ¶¶ 7–12]. Each plaintiff further alleges that, prior to their purchase, they reviewed the shoes' "Made in USA" materials, relied on those representations which they understood as representations and warranties that the shoes were made in the USA and that had they known the shoes could not be considered "Made in the USA, they would not have purchased the shoes for the price they did." [Id. at ¶¶ 4, 7–12].

Plaintiffs bring fourteen claims against New Balance for the allegedly deceptive marketing of their "Made in USA" shoes. [Id. at ¶¶ 72–242]. The first claim is for deceptive advertising in violation of Mass. Gen. Laws ch. 93A (Count I). [Id. at ¶¶ 72–91]. The second and third claim are for breach of express warranty (Count II) and violation of the Magnuson-Moss Warranty Act (hereinafter "MMWA") (Count III). [Id. at ¶¶ 92–108]. Plaintiffs also bring

one claim for unjust enrichment (Count IV) and one claim for fraud (Count V).  [Id. at ¶¶ 109–121].  The remaining claims are brought under various consumer protection state statutes in California (Counts VI–VIII), Michigan (Count IX), Pennsylvania (Count X), New Jersey (Count XI), Florida (Count XII), and New York (Counts XIII–XIV), which prohibit false/misleading advertising.  [Id. at ¶¶ 122–242].

New Balance has filed a motion to dismiss all claims and to strike the plaintiffs class allegations [Dkt. 19], which plaintiffs have opposed [Dkt. 22].

## II.   LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán, 734 F.3d at 103.  First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements.  Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

Under Fed. R. Civ. P 12(f), the Court can strike redundant, immaterial, impertinent, or scandalous matter from the pleadings.  Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 42 (1st Cir. 2013) (citations omitted).  If it is "obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis," the Court can use its authority under 12(f) to strike the complaint's class allegations.  Id. at 59.  However, the Court however should exercise caution when doing so and "should typically wait until development of a factual record."  Id.

III.    DISCUSSION

1.   Deceptive Advertising of New Balance's "Made in USA" Shoes

   A.  New Balance's advertising

Plaintiffs claim that New Balance's deceptive marketing of its shoes violates several consumer protection statutes that prohibit deceptive advertising and unfair business practices. [Am. Compl. at ¶¶ 72–91, 122–242].  New Balance argues that alongside any "Made in USA" statement, it includes an express qualification that any consumer would see at the point of purchase, that these qualifications are unambiguous, and that its marketing complies with the relief agreed to in the Dashnaw settlement.  [Dkt. 20 at 10–14].  Plaintiffs respond by asserting that these qualifications are not sufficiently clear or prominent, that New Balance regularly makes prominent and unqualified "Made in USA" claims, and that several of the plaintiffs purchased the shoes on websites that did not feature the disclaimers.  [Dkt. 22 at 5–8].  Plaintiffs further argue that the Dashnaw settlement does not preclude relief because it is not binding on the plaintiffs and because New Balance is not in compliance with that settlement.  [Id. at 8–12]. Under the FTC's guidelines, for a product to be considered "Made in USA," it must be "all or virtually all" made in the USA.  Fed. Trade Comm'n, Enforcement Policy Statement on U.S. Origin Claims, 62 Fed. Reg. 63766 (Dec. 2, 1997).  In other words, "all significant parts and

processing that go into the product must be of U.S. origin" and the "product should contain no—
or negligible—foreign content." Fed. Trade Comm'n, <u>Complying with the Made In USA
Standard</u> at 4, <u>https://www.ftc.gov/tips-advice/business-center/guidance/complying-made-usa-
standard</u> (hereinafter "Compliance Guide").

New Balance does not contest the fact that its "made" collection fails to meet this
standard; instead, they argue that their shoes fall under the FTC's criteria for "Qualified U.S.
Origin Claims," which are not considered deceptive if the foreign composition is adequately
disclosed.  [Dkt. 20 at 13].  To be effective, such qualifications or disclosures should be
"sufficiently clear, prominent, and understandable to prevent deception."  62 Fed. Reg. 63769.
This can be done by specifying the domestic amount, such as saying a product is made of "60%
U.S. content," or indicating generally the existence of foreign content (e.g., "Made in USA of
U.S. and imported parts").  62 Fed. Reg. 63770.  A qualified claim must be true, and "because
even qualified claims may imply more domestic content than exists, manufacturers or marketers
must exercise care when making these claims."  Compliance Guide at 9.

The Court finds that the plaintiffs have sufficiently plead that New Balance sold shoes in
its "made" series without adequately disclosing the foreign content of its shoes.  In their
complaint, Plaintiffs point to several examples where a consumer would see the shoes presented
as being "Made in the USA" without any qualification—including on the shoes themselves—
with any disclaimer featured less prominently elsewhere.  <u>See</u> [Am. Compl. at ¶¶ 20–28].  The
Court notes that in particular, several shoes in the "made" collection online feature an
unqualified phrase of "Made in USA" next to the shoes' model name, such as "Made in USA
993" or "Made in USA 990v5."  <u>Id.</u> at ¶ 25].  Plaintiffs plausibly suggest that consumers
purchasing these shoes online, whether on New Balance's "Footwear Made in the USA"

collection page or on the websites of third parties like Amazon, would do so either while missing or while not understanding New Balance's 70% qualifications stated elsewhere on the website or in the products descriptions.  See [Id. at ¶¶ 9, 12, 19–28].

For online purchases made on third party websites, such as those made on amazon.com, New Balance asserts that the plaintiffs have not included sufficient factual allegations about which of New Balance's statements they encountered and that therefore New Balance has not been given sufficient notice for those claims.  [Dkt. 26 at 4].  However, both plaintiffs who purchased shoes on amazon.com describe their experiences on the website wherein they viewed the shoes' marketing, advertising, and packaging which indicated that the shoes were "Made in the USA" and made their purchases because of those representations.  [Am. Compl. at ¶¶ 9, 12, 19–28]. Not including screenshots of those other websites does not make their claim deficient as the plaintiffs would have seen the same representations in the "made" collection shoes' names, on images of shoes themselves, and in the shoes' descriptions that purchasers on newbalance.com or in brick-and-mortar stores would have seen.  [Id.]

New Balance contends that it features disclaimers about its "Made in the USA" collection that specify that its shoes feature a "domestic value of 70% or greater" on the physical shoes' hangtags, on the side of the shoeboxes, in the link to the "Made in the USA" collection on their website, and in the caption of the "Made in the USA" collection page.  [Dkt. 20 at 7–8].  This argument is insufficient at this stage for two reasons.

First, plaintiffs plausibly allege that the disclaimer is too inconspicuous for the qualification to be brought to the consumers attention. Because of the prominent unqualified assertions of "Made in the USA" on the physical shoes and on the website, a reasonable consumer could see the "Made in the USA" statement and not understand it to be qualified by a

disclaimer elsewhere on the product.  See Dumont v. Reily Foods Co., 934 F.3d 35, 37–38 (1st Cir. 2019) (consumer sufficiently plead that labeling product hazelnut crème coffee, which ingredients label made clear had no hazelnut, was deceptive).  The prominent featuring of unqualified statements creates an expectation that can make consumers less likely to process or understand less prominent qualifiers included elsewhere.  See Locklin v. StriVectin Operating Company, Inc., 2022 WL 867248 at *3 (N.D. Cal. 2022) ("reef safe" sunscreen label not disclaimed by asterisk pointing to ingredients that are harmful to coral reefs); Mantikas v. Kellogg Co., 910 F.3d 633, 636 (2d Cir. 2018) (deception found when nutrition facts on side of package clarified wholegrain content displayed on the front); Williams v. Gerber Products Co., 552 F.3d 934, 939 (9th Cir. 2008) ("reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box"); Beardsall v. CVS Pharmacy, Inc., 953 F.3d 969, 978 (7th Cir. 2020).

Second, even if a consumer notices a disclaimer about the shoes having a "domestic value of 70% or greater," the plaintiffs have plausibly alleged that this phrase contains a level of inherent ambiguity as it has no relevant legal definition.  See [Am. Compl. at ¶ 44]; 50 C.F.R. § 12.3.  While one consumer may understand the qualifier to mean that up to 30% of the product is made and assembled outside the United States, another could assume it is saying that only 30% of the shoe has some partial foreign value but that the shoes is still virtually all made in the USA.  Still another could take the phrase to mean some characterization of the products' a percentage benefit or value to the United States economy.  When evaluating whether "a factfinder could reasonably regard the label as having the capacity to mislead," the Court must accept as true all well-pleaded facts and make all reasonable inferences in the plaintiff's favor.  Dumont, 934 F.3d

at 40 (citations omitted).  On the available facts, given the ambiguous definition, the Court cannot definitively find that a reasonable consumer would understand this disclaimer.  Id.

For shoes purchased in person at brick-and-mortar stores, the plaintiffs have plausibly alleged that the shoes' advertising could be characterized as deceptive.  Shoes in the "made" collection feature a silhouette of an American flag alongside the words "made" on the side of the shoebox and on the hangtags—which could potentially imply they were "Made in the USA." [Am. Compl. at ¶¶ 39–41].  Despite the smaller disclaimer stating the products' "domestic value of 70% or greater" on the side and on the rear of the hangtag, if that disclaimer is too ambiguous to be understood or is not sufficiently prominent to be seen, it is insufficient to prevent deception.  See [id.]; 62 Fed. Reg. 63769.  The plaintiffs who purchased in brick-and-mortar stores have plausibly plead that this was the case when they purchased the shoes. [Am. Compl. at ¶¶ 7–8, 10].

### B.  Dashnaw settlement

In Dashnaw v. New Balance Athletics, Inc., 2019 WL 3413444 (S.D. Cal. 2019), the Southern District of California approved a settlement based on a similar challenge brought against New Balance's "Made in USA" claims.  The advertising challenged in Dashnaw featured more unqualified "Made in USA" statements in stores and on defendant's website than plaintiffs here plead.  See [Dkt. 21-1 at 26–44]; [Am. Compl. at ¶¶ 19–49].  As part of the settlement, New Balance agreed that it would less prominently advertise "Made in USA" claims regarding its shoes with less than 95% domestic content and that such claims instead be accompanied with the disclosure that the "Made in USA" collection "contains a domestic value of 70% or greater."  Id. at *6.  The injunctive relief further specified that the phrase "Made in the USA" would be removed from the front of the hangtags on the shoes, the hangtag would include the sentence,

"New Balance 'made' is a premium collection that contains domestic value of 70% or greater", the phrase "Made in the USA" would be removed from the top of shoe boxes, any representations on the side of shoe boxes would include the 70% domestic value disclaimer, and any claims on New Balance's website would include the same qualification.  [Dkt. 21-3, 14-16]. Dashnaw does not have preclusive effect on the plaintiffs here who are consumers either outside of California or who purchased the shoes in California after the class period in Dashnaw.  2019 WL 3413444, at *1.

New Balance does not argue that the Dashnaw settlement precludes the plaintiffs' claims, but rather that New Balance's compliance with Dashnaw makes the plaintiffs' claims implausible.  [Dkt. 26 at 5–6].  The plaintiffs meanwhile argue that since a footnote in Dashnaw indicated that the settlement stopped short of enforcing Cal. Bus. and Prof. Code § 17533.7, that even compliance with Dashnaw was not sufficient to bring New Balance into compliance with the law.  [Dkt. 22 at 9–11].

While § 17533.7 regulates the sale of goods labeled "Made in USA" and does mandate that they be "entirely or substantially made, manufactured, or produced" in the United States, it also states that merchandise sold outside of California is not mislabeled if it conforms to the law of that forum state.  Cal. Bus. and Prof. Code § 17533.7 also does not apply to qualified "Made in USA" claims.  Paz v. AG Adriano Goldschmeid, Inc., 2014 WL 5561024 at *5 (S.D. Cal. 2014); Clark v. Citizens of Humanity, LLC, 97 F.Supp.3d 1199, 1208 (S.D. Cal., 2015).  The Dashnaw Court may have noted that the relief stopped short of the standard in § 17533.7, which is more akin to an "all or virtually all" standard, but if the statements are adequately qualified or disclaimed, then § 17533.7 does not apply anyway.  See 2019 WL 3413444 at *6 n.8.  The

applicability of the statute instead hinges on the sufficiency of New Balance's qualifications, including in those updated in response to the settlement.

Here, the Court finds that the plaintiffs have plausibly plead that the marketing of New Balance's "made" shoe line does not fully comply with the <u>Dashnaw</u> settlement.  Plaintiffs have highlighted several unqualified "Made in USA" claims still in use including on the tongues of shoes, in their inside label, and on the New Balance website.  [Am. Compl. at ¶ 19–28, 39–40]. Most importantly, since <u>Dashnaw</u>, the top of the shoeboxes and front of hangtags no longer bear "Made in the USA" and instead feature the phrase "made" imposed on or positioned by a United States flag on shoeboxes, tags, and online, which may still deceptively imply that the shoes are "Made in the USA."  [Am. Compl. at ¶¶ 27, 39–42], [Dkt. 27 at 6].  Such a characterization lends weight to the argument that New Balance is not in compliance with terms agreed in <u>Dashnaw</u>.  [Dkt. 21-3 at 12–14].

Given the presence of unqualified claims and the potential deficiency of New Balance's qualifiers, the Court also finds that plaintiffs have plausibly alleged that New Balance may employ deceptive marketing even when in compliance with the <u>Dashnaw</u> settlement.  <u>Dashnaw</u> does not preclude the claims brought here, and while it is an instructive prior adjudication, its conclusions are not binding on this Court.

### C.  Rule 9(b) and fraud

The plaintiffs assert that New Balance's representation that its shoes were "Made in the USA" constitutes fraud.  [Am. Compl. at ¶¶ 115–121].  Claims of fraud must be plead with particularity pursuant to Fed. R. Civ. P. 9(b).  The purpose of this heightened pleading requirement is to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to

prevent the filing of suits that simply hope to uncover relevant information during discovery."
Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996). Such a claim must "include specifics
about the time, place, and content of the alleged false representations." Juarez v. Select Portfolio
Servicing, Inc., 708 F.3d 269, 280 (1st Cir. 2013). These specifics include pleading the "who,
what, where, and when of the allegedly [misleading] representation." Dumont, 934 F.3d at 38
(citations omitted); Kaufman v. CVS Caremark Corp., 836 F. 3d 88, 91 (1st Cir. 2016).

Where there are general claims of fraud, or where the core allegations effectively charge
fraud, such as in the consumer protection context, Rule 9(b) applies. See Mulder v. Kohl's Dep't
Stores, Inc., 865 F.3d 17, 21–22 (1st Cir. 2017). In Mulder, the department store Kohl's was
sued over its presentation of comparison prices highlighting the savings that customers were
making—comparison prices which were "fictional amounts intentionally selected so that Kohl's
could advertise phantom markdowns" and persuade customers to make purchases they otherwise
would not make." Id. at 19.

Here, the core allegations against New Balance's allegedly deceptive marketing are more
complex, may not require intent and other common-law fraud requirements, and do not sound
exclusively in fraud. Additionally, several of the plaintiffs' claims are also based on federal and
state regulations that cover but do not exclusively rely on claims of fraud. See Pelman ex rel.
Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) (explaining that because N.Y.
Gen. Bus. Law § 349 (plead by plaintiffs in the instant matter at Count XIII) extends beyond
common law fraud and covers other deceptive practices with different elements, actions not
subject to the pleading-with-particularity requirements of Rule 9(b)); Manchanda v. Navient
Student Loans, 2020 WL 5802238, at *5 (S.D.N.Y. 2020) (holding that claims under N.Y. Gen.
Bus. Law § 350 (plead by plaintiffs in the instant matter at Count XIV) alongside § 349 are not

subject to Rule 9(b)'s heightened pleading standard); <u>Hallal v. Vicis Capital Master Fund Ltd.</u>, 2013 WL 1192384 at *15 (D. Mass. 2013) (applying Rule 8's "plain statement requirement" instead of Rule 9(b)'s heightened pleading requirements to a claim under Chapter 93A (as plead by plaintiffs here at Count I) because that claim was "not based on fraud").

The heightened standard may make evaluating the sufficiency of the pleadings a closer question, but this Court nonetheless finds that, even under the heightened 9(b) standard, plaintiffs have plead sufficient facts to make their claims plausible.  The plaintiffs have identified New Balance, the producer of the shoes marketed as being "Made in the USA," as the "who" and the shoes' status as not being "Made in the USA" as the phrase is defined by the FTC as the "what." [Am. Compl. at ¶¶ 2, 29–37].  The "where" is sufficiently detailed in the complaint by identifying the places in which "Made in USA" statements were made including on the tongues of shoes, shoe boxes, on New Balance's website.  [<u>Id.</u> at ¶¶ 7–12, 19–28, 39–40].  The plaintiffs also identify the manner in which New Balance qualified these statements and provide argument for why its qualifications are insufficient.  [<u>Id.</u> at 40–49].  The plaintiffs provide the "when" by detailing the approximate time and specific location or website wherein plaintiffs viewed New Balance's "Made in USA" or "made" marketing and subsequently purchased the shoes.  [<u>Id.</u> at 7–12].  They explain how they paid a price they otherwise would not have paid if they knew that the sneakers were not considered to be "Made in the USA."  [<u>Id.</u> at 7–12].  In short, New Balance has been provided sufficient information to be on notice of the plaintiffs' claim and the factual basis underlying them.  <u>See</u> <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 194 (1st Cir. 1996).

New Balance asserts that the plaintiffs' fraud-based claims fail because they have not alleged that their qualified representations are false or that the plaintiffs cannot plausibly allege intent, especially given New Balance's compliance with the <u>Dashnaw</u> settlement.  [Dkt. 20 at

16].  At the motion to dismiss stage, wherein the Court must make all reasonable inferences in favor of the pleader, the plaintiffs have plausibly alleged intent by showing that Defendant represented the shoes as being made in the USA, while knowing they could not be considered so, because consumers are more willing to pay a premium for products made in the USA.  See Dumont, 934 F.3d at 40; [Am. Compl. at ¶¶ 3–4, 50–57].  Plaintiffs provide support for this allegation by showing how the "Made in USA" collection is more expensive than other shoes that New Balance produces.  [Id. at ¶ 56].  The Court also finds that plaintiffs have plausibly alleged New Balance's representations are false because of both the presence of unqualified "Made in the USA" claims and because of the alleged insufficiency of the associated qualifications.  [Id. at ¶¶ 20–28, 29–49].

Furthermore, New Balance's settlement in Dashnaw is not sufficient to disregard plaintiff's allegation of intent given that plaintiffs have plausibly plead that New Balance is not in compliance with the Dashnaw injunction.  Plaintiffs supported their claim with allegations that the changes New Balance made after Dashnaw, such as shifting "Made in USA" to "made" on marketing materials, function too similarly to the materials that the settlement prohibits.  [Id. at ¶¶ 20–28]; [Dkt. 22 at 12]; [Dkt. 27 at 6].

The motion to dismiss Plaintiff's consumer protection claims, fraud-based claims, and any associated claims subject to Rule 9(b) (Count I, V-XIV) is therefore **DENIED**.

### 2.  Warranties

Plaintiff brings two warranty-based claims: a breach of express warranty (Count II) and a violation of the MMWA (Count III).  They base these claims on the fact that New Balance issued representations and written warranties that the shoes were "Made in the USA," that this formed part of the basis of the bargain between New Balance and the plaintiffs, and that because the

shoes do not meet that description as it is defined by the FTC, New Balance breached these warranties. [Am. Compl. at ¶¶ 92–108].  Defendant argues in part that plaintiffs' warranty claims fail because of their attendant disclaimers.  [Dkt. 20 at 17–18].

Under Mass. Gen. Laws ch. 106 § 2-313(1), an express warranty claim is considered an action of contract.  Taupier v. Davol, Inc., 490 F. Supp. 3d 430, 437 (D. Mass. 2020).  The plaintiff must demonstrate that defendant promised a specific result and that defendant failed to deliver on this promise, breaching the express warranty.  Id. at 438.  The plaintiff must also demonstrate that the express warranty constituted the basis of the bargain between the seller and the buyer.  Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70, 102 (D. Mass. 1998).  Plaintiff must show that the buyer relied on the warranty in order to show it constituted the basis of the bargain.  Hebert v. Vantage Travel Serv., Inc., 444 F. Supp. 3d 233, 246 (D. Mass. 2020).  An advertisement can constitute an express warranty.  See Hannon v. Original Gunite Aquatech Pools, 434 N.E.2d 611, 617 (Mass. 1982).

The various plaintiffs here have alleged that they saw and relied on New Balance's description that the shoes were "Made in the USA", that they paid an amount above what they would have had the shoes not made that promise, and that defendant failed to deliver on their promise because the shoes cannot be considered "Made in the USA."  [Am. Compl. at ¶¶ 7–12, 95]. These allegations articulate a viable claim for a violation of an express warranty under Massachusetts state law. See Taupier, 490 F. Supp. 3d at 437–38.

Defendant's assertions that its disclaimers altered any promise and also formed part of the basis of the bargain are not sufficient to dismiss this claim at this stage because the plaintiffs have plausibly alleged that the disclaimers are too inconspicuous for reasonable consumer to notice or are inherently ambiguous and unclear even when viewed. See [Am. Compl. at ¶ 40–

16

49].  Furthermore, New Balance cannot negate or limit a warranty with a contradictory disclaimer if, as plaintiff has alleged, a reasonable consumer would not expect there to be small print qualifications that contradict its more prominent unqualified "Made in the USA" marketing. [Id. at ¶ 42]; Mass. Gen. Laws. ch. 106, § 2-316(1); USM Corp. v. Arthur D. Little Sys., Inc., 546 N.E.2d 888, 896 (Mass. App. Ct. 1989) ("To the extent that the express warranties are inconsistent with the disclaimer . . . G.L. c. 106, § 2–316(1), requires that the express warranties be given effect").  Any promise though must also be read alongside the seller's other statements which, if clear enough, can negate the creation of an express warranty.  See Jones v. Walter Kidde Portable Equip., Inc., 183 F.3d 67, 70 (1st Cir. 1999) (finding no express warranty created by statement in owner's manual because that statement was flanked by a prominent warning describing what could go wrong and how to prevent it).  Given that the Court must accept the truth of all well-pleaded facts and draw all reasonable inferences in the plaintiffs' favor, the Court finds that plaintiffs have sufficiently plead that New Balance's promises constituted an express warranty under Massachusetts law.  García-Catalán, 734 F.3d at 102.

New Balance seeks to dismiss plaintiffs' claims brought under the MMWA in part because the statute's conception of express warranties is narrower than the UCC and applies only to promises of defect free performance—the breach of which is not alleged here.  [Dkt. 20 at 17–18]; Collette v. Sig Sauer, Inc., 2021 WL 6052613, at *6 (D. Mass. 2021).  A product description such as "Made in the USA" does not fall into the MMWA's scope of a written warranty.  See In re Sears, Roebuck & Co., 2006 WL 1443737, at *4 (N.D. Ill. 2006).  However, since the plaintiffs can assert a claim under the MMWA for either a violation of the statute itself or by articulating state-law warranty claims, and because plaintiffs have articulated a viable claim under Massachusetts state law, the Court cannot dismiss plaintiffs' MMWA claim at this time.

See Collette, 2021 WL 6052613 at *5 ("A complaint can . . . state a claim by alleging either a violation of the MMWA's substantive provisions or by satisfying the requirements for a covered state-law cause of action"); Monroe v. Medtronic, Inc., 511 F. Supp. 3d 26, 36 (D. Mass. 2021).

Defendant also challenges the MMWA class action claim as procedurally deficient because the MMWA requires the number of named plaintiffs to be at least one hundred for there to be cognizable class.  15 U.S.C. § 2310(d)(3)(C); [Dkt. 20 at 19].  The Ninth Circuit has held that the Class Action Fairness Act (CAFA) does not alter this requirement, see Floyd v. Am. Honda Motor Co., 966 F.3d 1027, 1034 (9th Cir. 2020), however, many other courts, including here in the District of Massachusetts, have reached the opposite conclusion. See Duncan v. Nissan N. Am., Inc., 305 F. Supp. 3d 311, 322 (D. Mass. 2018) (denying motion to dismiss MMWA claim, brought by eight plaintiffs, because the statute incorporated requirements of a state law cause of action); Barclay v. ICON Health & Fitness, Inc., 2020 WL 6083704, at *7 (D. Minn. 2020) ("once plaintiffs have satisfied CAFA, the MMWA's additional requirements do not apply"); Dack v. Volkswagen Grp. of Am., 565 F. Supp. 3d 1135, 1143 (W.D. Mo. 2021) (following Barclay instead of Floyd); Kuns v. Ford Motor Co., 543 F. App'x 572, 574 (6th Cir. 2013) (finding that CAFA, which was more recent than the MMWA and designed to expand federal court jurisdiction over class actions, supersedes the MMWA's more stringent jurisdictional requirements); Bechtel v. Fitness Equip. Servs., LLC, 339 F.R.D. 462, 478 n.5 (S.D. Ohio 2021)(following Kuns over Floyd).

This Court concurs with the majority of district courts that have addressed this issue. Here, like in Duncan, because plaintiffs' amended complaint pleads facts sufficient to establish both that their claim meets the amount in controversy and diversity requirements of 28 U.S.C. 1332(d)(2) and, as discussed above, establishes a plausible claim for breach of express warranty

under Mass. Gen. Laws ch. 106 § 2-313(1), this Court finds that they have stated a claim for a violation of the MMWA.  See 305 F. Supp. 3d at 322.  As such, Defendant's motion to dismiss as to the plaintiff's warranty claims is **DENIED.**

### 3.  Nationwide Class

Courts must exercise caution when striking class action allegations based solely on the pleadings as during discovery, the parties will be better able to develop the factual record which will determine whether "the case should move forward on a representative basis."  Manning, 725 F.3d at 59.  The plaintiffs have introduced two claims, breach of express warranty under the MMWA and a violation of Mass. Gen. Laws Ch. 93A, as the basis for their nationwide class allegations.  [Am. Compl. at ¶¶ 72–91, 99–108].

Mass. Gen. Laws Ch. 93A provides sufficient basis for a nationwide claim against a Massachusetts company because it does not require a plaintiff to reside in Massachusetts or for the allegedly deceptive activity to have primarily and substantially occurred in Massachusetts.  See Geis v. Nestle Waters N. Am., Inc., 321 F. Supp. 3d 230, 241 (D. Mass. 2018); Bezdek v. Vibram USA Inc., 79 F. Supp. 3d 324, 339 (D. Mass. 2015) (certifying nationwide class of consumers who purchased shoes based on misrepresentation of its health benefits in which "Mass. Gen. Laws ch. 93A provide[d] a serviceable and appropriate cause of action common to all class members"), aff'd, 809 F.3d 78 (1st Cir. 2015).  Plaintiffs have alleged that New Balance's conduct originated in its Massachusetts headquarters. [Am. Compl. at ¶ 77].

Since the plaintiffs have adequately plead their claim under Mass. Gen. Laws Ch. 93A and the MMWA, the striking of a nationwide class would be premature at this stage.  The motion to dismiss as the nationwide class allegations at this stage is also **DENIED**.

### IV.   CONCLUSION

For the foregoing reasons, New Balance's motion to dismiss [Dkt. 19], is **DENIED.**

   **SO ORDERED.**

Dated: 12/23/22

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge